Docket No. 109029.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. ARTHUR R. MANNING, Appellant.

*Opinion filed February 3, 2011.*

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Justices Thomas and Theis concurred in the judgment and opinion.

Chief Justice Kilbride specially concurred, with opinion.

Justice Karmeier specially concurred, with opinion.

Justice Freeman dissented, with opinion, joined by Justice Burke.

## OPINION

Following a jury trial in the circuit court of Du Page County, defendant, Arthur R. Manning, was convicted of one count of possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(A) (West 2004)) and one count of possession of a controlled substance (720 ILCS 570/402(c) (West 2004)). He was sentenced to concurrent prison terms of 11 years and 3 years, respectively. The appellate court affirmed defendant's convictions and sentences. No. 2–07–0846 (unpublished order under Supreme Court Rule 23).

## BACKGROUND

Defendant was arrested after allegedly selling cocaine to an undercover police officer posing as a taxi driver and to a man posing as a passenger. The passenger went into a duplex located at 37 Sunset Court in Bensenville. He returned to the taxi with defendant, who then sold the passenger cocaine. When the officer asked to purchase cocaine, defendant went back inside the duplex and returned with cocaine that he then sold to the officer. Following defendant's arrest, a search warrant was executed at the duplex. Cocaine was found inside a mattress in the basement, along with men's clothing, more cocaine, a digital scale, and a razor blade. Cocaine was also found in other rooms of the duplex and heroin was found in a freezer.

During *voir dire*, defense counsel told the members of the venire that at the trial, they would hear evidence that defendant is a registered sex offender and that his registered residence address was not at 37 Sunset Court. Counsel thus questioned potential jurors about what impact, if any, defendant's sex offender status would have on their ability to be fair and impartial.

During questioning by the trial court, juror 165 (hereafter referred to as A.C.) stated that he came to the United States from Romania six years before and was in the printing business. He stated he could be fair to both sides and would judge the believability of all witnesses using the same standard for everyone. He had no criminal record, had never been a crime victim, and had not been involved in any lawsuits. A.C. stated that he had received two speeding tickets since he came to this country. Defense counsel then questioned A.C. When counsel asked A.C. how he felt about sex offenders, A.C. responded that they should be "locked up for life." The following exchange then occurred:

"Q. What if the law permitted that he not be locked up for life or she not be locked up for life? Do you still think that should be the case? Do you think you would be able to listen to a case and render a judgment on a case that's separate and distinct from the sex offender case?

A. Yes.

Q. Even though that person may have that background?

A. Yes.

Q. Is that background going to influence you at all do you

-2-

believe in your decision on the case?

A. I don't think so.

Q. You don't think so?

A. No.

Q. Can you be more specific? Can you say that it's not going to?

A. No.

Q. You cannot?

A. No. I said it's not going to change. I cannot be fair with the case.

Q. You can be fair, or you cannot?

A. No, I cannot be fair.

Q. You can be fair?

A. No, I cannot be fair. I could not be fair also."

Defense counsel did not move to strike A.C. for cause nor did he use a peremptory challenge to remove him from the jury. Counsel did excuse another juror who said her opinion of defendant "dropped drastically" when she learned of his sex offender status. In all, counsel used five of defendant's seven available peremptory challenges.

At the trial, special agent Matthew Gainer of the Illinois State Police testified that at the time of defendant's arrest, he was assigned to the Du Page County Metropolitan Enforcement Group, which investigated street-level narcotics trafficking. On July 14, 2005, Gainer and his fellow officers were investigating defendant. Gainer posed as a taxi driver. He and a passenger in the car drove to 37 Sunset Court in Bensenville, where Gainer parked the car. The passenger went inside and when he came back out, defendant was with him. The two stood by the passenger door of the car, where the passenger purchased two bags of crack cocaine from defendant for $40. Gainer asked if he could purchase some cocaine. Defendant went back into 37 Sunset Court and returned a short time later. Defendant gave Gainer three bags of crack cocaine in exchange for $60. Defendant then returned to the residence.

Gainer further testified that he and other officers executed a search warrant at the residence on July 28, 2005. They searched the basement, where they found men's clothing and three bags of cocaine,

a scale, and identification documents. In another part of the residence, the officers found two more bags of cocaine. Gainer seized defendant's Illinois identification card, issued on January 29, 1995, with an address of 37 Sunset Court. He also seized a checkbook with the address of 212 West Sunny Lane. Officers also found a piece of mail addressed to defendant at the Sunset Court address and another addressed to him at the West Sunny Lane address with a forwarding address to Sunset Court.

Officer Michael Hanrahan testified that he and another officer spoke to defendant at the police station. While taking defendant's personal history, defendant told them that he lived at 37 Sunset Court. After waiving his *Miranda* rights, defendant gave a statement in which he again said that he lived at 37 Sunset Court, that he had resided there for approximately 10 months, and that he had sold cocaine there for a year. Defendant told the officers they could find heroin in a freezer at the residence that he was holding for someone else. When this information was relayed to officers on the scene, they found 14 tinfoil packets of heroin in the freezer. Defendant prepared a written statement in which he again confirmed his residence as 37 Sunset Court.

Former Bensenville police detective Maria Hernandez testified that she monitored sex offenders. As a registered sex offender, defendant was not allowed to live within 500 feet of a park. Because the residence at 37 Sunset Court was closer than 500 feet to a park, Hernandez ordered defendant to move in December 2004. She could not verify whether he had complied, although defendant told her he had moved to Maywood.

Bensenville police officer Todd Zoglman testified that in May 2005, he stopped defendant for driving on a suspended license. The Secretary of State's records showed defendant's address as in Maywood. However, suspended licenses could not be updated and Zoglman testified that the records on defendant's identification card listed his current address as 37 Sunset Court.

Defendant testified that he moved from Sunset Court to Maywood in December 2004. He updated some of his records but not others. He did register his Maywood address with the local police department. In March 2005, he was arrested for driving under the influence. A certified copy of the traffic citation introduced into evidence showed

defendant's address as 2033 South Third Avenue in Maywood. Defendant testified that he frequently visited his girlfriend and her three children, who lived at the Sunset Court address. On July 28, 2005, he drove to Sunset Court to take his girlfriend to Rockford. The police drove up and arrested him. When he got to the police station, an officer told defendant to initial and sign a *Miranda* waiver. He did so after reading it. The interrogating officers accused him of selling drugs. When defendant stated that he wanted an attorney, the officers told him he would get one later in Wheaton. Defendant testified that the only reason he wrote and signed a statement was because the officers threatened to take custody of his girlfriend's children. The officers told him to write 37 Sunset Court as his address on his statement. Defendant denied that he had sold any drugs.

Hanrahan testified in rebuttal, denying defendant's claim that he had asked for an attorney. He denied that defendant was threatened or that he was told to write down the 37 Sunset Court address.

Defendant was convicted and sentenced as stated. On appeal, defendant argued, *inter alia*, that his trial counsel was ineffective for failing to excuse A.C. from the venire due to his statements that he could not be fair to defendant because of his sex offender status. The appellate court rejected this argument, noting that under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) (adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984)), defendant must demonstrate both deficient performance and prejudice. The court noted that, generally, counsel's conduct during jury selection is considered to involve matters of trial strategy not subject to scrutiny under *Strickland*. The court concluded that defendant failed to demonstrate prejudice because the evidence against him was overwhelming. In addition, the court rejected defendant's argument that prejudice should be presumed where a biased juror sat on his jury. No. 2–07–0846 (unpublished order under Supreme Court Rule 23). This court granted defendant's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010).

## ANALYSIS

Defendant argues that his trial counsel rendered deficient performance in failing to challenge A.C. for cause or exercise a

peremptory challenge. He further argues that he was prejudiced by counsel's failure. In the alternative, he argues that this court should find that jury bias is presumptively prejudicial under *Strickland*.

Claims of ineffectiveness of counsel are judged under the familiar standard set forth in *Strickland*. A defendant must show that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688, 694.

> "In order to satisfy the deficient-performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment. Counsel's performance is measured by an objective standard of competence under prevailing professional norms. Further, in order to establish deficient performance, the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999); *People v. Griffin*, 178 Ill. 2d 65, 73-74 (1997). Matters of trial strategy are generally immune from claims of ineffective assistance of counsel. *People v. West*, 187 Ill. 2d 418 (1999)." *People v. Smith*, 195 Ill. 2d 179, 188 (2000).

Defendant first argues that the appellate court applied the wrong standard of review on the prejudice prong of *Strickland*. Initially, the court stated the test correctly, *i.e.*, that defendant must show a reasonable probability that the result of the proceeding would have been different. However, later in the opinion, the court stated that it could not say that the result of defendant's trial "would have been different" had A.C. not served on the jury. Defendant also alleges similar inconsistencies in other cases.

Defendant is correct that the prejudice prong of the *Strickland* standard does not require that a defendant demonstrate that the result of his trial would have been different. Rather, although a defendant must show a reasonable probability that the result of the proceeding would have been different, "the prejudice prong of *Strickland* is not simply an 'outcome-determinative' test but, rather, may be satisfied if

-6-

defendant can show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *People v. Jackson*, 205 Ill. 2d 247, 259 (2001); see also *People v. Evans*, 209 Ill. 2d 194, 220 (2004) ("a reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome–or put another way, that counsel's deficient performance rendered the result of the trial unreliable or fundamentally unfair").

Despite the appellate court's misstatement of the standard, we do not find that the court erred in applying it to defendant's case.

In addressing defendant's ineffectiveness argument, the appellate court found this court's decision in *People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002), to be dispositive of defendant's appeal. In *Metcalfe*, the defendant appealed his conviction on the ground that he was denied his right to a fair trial when one of the members of his jury, a woman named Grevus, indicated during *voir dire* that she could not be fair and impartial. The appellate court reversed the defendant's conviction and remanded for a new trial, holding that the trial court had a *sua sponte* duty to excuse Grevus even though defendant's counsel had not challenged her for cause or exercised a peremptory challenge. During *voir dire*, Grevus indicated that she and her parents had been crime victims. She had been robbed at gunpoint and the perpetrator "got off because of a technicality." Grevus noted that the defendant's attorney had tried to discredit her trial testimony identifying the defendant as the perpetrator. Defense counsel asked Grevus whether the result of that case would cause her to be biased in any way. She answered that it would and stated that she felt the perpetrator was clearly guilty. Defense counsel excused two other prospective jurors but did not excuse Grevus. The appellate court reviewed the defendant's claim under the second prong of the plain-error rule. The court found that Grevus was biased against the defendant and held that when a prospective juror indicates bias or prejudice and counsel does not move to excuse the prospective juror, the trial court has a *sua sponte* duty to do so. This court disagreed, holding that no *sua sponte* duty exists. *Id.* at 551, 557.

In addition, this court addressed the defendant's argument that his trial counsel was ineffective for failing to challenge Grevus and that prejudice should be presumed due to the fact that an actually biased

juror served on his jury, invoking the United States Supreme Court's decision in *United States v. Cronic*, 466 U.S. 648 (1984). This court noted *Cronic* held that there are certain circumstances that are so likely to prejudice an accused that the cost of litigating their effect in a particular case is unjustified. This includes a complete denial of counsel, where counsel fails to subject the prosecution's case to any meaningful adversarial testing. This court found *Cronic* to be inapplicable, noting that an attorney's failure in this regard must be complete. The defendant in *Metcalfe* did not claim that his counsel failed to oppose the prosecution completely during *voir dire* as a whole, but only as to one prospective juror. In fact, defense counsel had exercised five peremptory challenges. *Metcalfe*, 202 Ill. 2d at 560-61. Instead, the court addressed the defendant's argument under the *Strickland* standard. Noting that defense counsel's strategic choices are virtually unchallengeable, this court rejected the defendant's claim that his counsel's actions were deficient. It was possible that defense counsel believed Grevus's bias was directed at the criminal justice system or at the prosecution, rather than at the defendant himself. Accordingly, the court found that counsel's decision not to challenge Grevus was a matter of trial strategy. This court further found that, assuming there was deficient performance, the defendant suffered no prejudice because the evidence at trial was more than sufficient to prove him guilty beyond a reasonable doubt. *Id.* at 561-62.

In his petition for leave to appeal, defendant in this case argued that this court should "reconsider" our decision in *Metcalfe* because juror bias is structural error, and since *Metcalfe* was decided, other courts have held that a biased juror is inherently prejudicial. Asking this court to reconsider *Metcalfe* is tantamount to asking us to overrule that decision. It is unclear to us how we could reconsider it without overruling it. Defendant also now argues in his brief that *Metcalfe* is distinguishable because the biased juror there only *might* have been biased toward the accused, whereas the biased juror here *was* deeply biased against defendant. Thus, according to defendant, his trial counsel's failure to challenge A.C. for cause or use a peremptory challenge to remove him from the jury was objectively unreasonable.

We first address defendant's argument that this court should overrule *Metcalfe*.

Defendant argues that prejudice should be "presumed" under

-8-

*Strickland*. He argues that *Strickland* assumed jury impartiality in its prejudice analysis. (Prejudice requires a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "[A] fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." *Id.* at 685.) Defendant cites federal cases and cases from other states which he says found juror bias prejudicial under *Strickland* and he asks this court to "refine the *Metcalfe* analysis" or "go in a different direction" in light of these cases. As with the request to reconsider *Metcalfe*, these suggestions essentially ask this court to overrule *Metcalfe*.

Defendant contends that some courts have focused on the lack of an impartial jury and, thus, the evaluation of prejudice "requires a showing that, as a result of trial counsel's failure to exercise peremptory challenges, the jury panel contained at least one juror who was biased." *Davis v. Woodford*, 384 F.3d 628, 643 (9th Cir. 2004). Defendant cites as an example the case of *People v. Vieyra*, 169 P.3d 205 (Colo. App. 2007), in which the defendant alleged in postconviction proceedings that his trial counsel was ineffective for failing to exercise an unused peremptory challenge. The court declined to find that prejudice is presumed when defense counsel fails to exercise all of the defendant's peremptory challenges, holding instead that the defendant must establish prejudice under *Strickland*. The court held that the defendant had not done so, noting that he had failed to establish which juror he would have struck with the remaining challenge and he had failed to establish facts suggesting bias on the part of any of the jurors who sat on his jury. *Id.* at 210.

Another case defendant cites is *Whitney v. State*, 857 A.2d 625 (Md. App. 2004), where the defendant argued his trial counsel was ineffective for failing to realize that defendant was entitled to 10 peremptory strikes. The trial court had told counsel that they each had four strikes and defense counsel failed to object. She exercised all four of the defendant's challenges. The appellate court found that counsel's performance was objectively unreasonable. In discussing the prejudice prong of *Strickland*, the court declined to find that prejudice was presumed. The court stated that, considering the record, it could not perceive any prejudice resulting from counsel's mistake that was

shown to have resulted in the impairment of the defendant's right to a fair and impartial jury and the trial was not unreliable or fundamentally unfair. *Id.* at 637. In *State v. Carter*, 2002 WI App 55, ¶15, 641 N.W.2d 517, the court found that counsel's failure to strike or further question a juror who admitted bias denied the defendant an impartial jury and rendered the outcome of the trial unreliable and fundamentally unfair, thus presuming prejudice regardless of whether the deficient performance had any impact on the result of the trial. Similarly, *Virgil v. Dretke*, 446 F.3d 598, 613 (5th Cir. 2006), found that the seating of biased jurors, without more, made the result of the defendant's trial unreliable; thus, prejudice was presumed.

Defendant argues that other cases focus on the structural nature of jury bias. The principal case defendant cites here is *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir. 2001). The court held there that the defendant's counsel was ineffective for failing to strike a biased juror. The court further held that the impaneling of a biased juror requires a new trial and prejudice under *Strickland* is presumed. *Id.*; see also *State v. King*, 2008 UT 54, ¶18, 190 P.3d 1283 (court stated that had the deficient performance of the defendant's counsel permitted an actually biased juror to be seated, the court would presume that the defendant's sixth amendment right to the effective assistance of counsel had been violated, citing *Hughes* with approval).

Defendant's request to this court to overrule *Metcalfe* implicates the doctrine of *stare decisis*. As we have explained:

> "The doctrine of *stare decisis* expresses the policy of the courts to stand by precedents and not to disturb settled points. [Citation.] This doctrine is the means by which courts ensure that the law will not merely change erratically, but will develop in a principled and intelligible fashion. [Citation.] *Stare decisis* enables both the people and the bar of this state to rely upon [this court's] decisions with assurance that they will not be lightly overruled." (Internal quotation marks omitted.) *People v. Sharpe*, 216 Ill. 2d 481, 519 (2005) (quoting *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81-82 (2004)).

We have also acknowledged that *stare decisis* is not an inexorable command. However, any departure from that doctrine must be specially justified; prior decisions should not be overruled absent good cause. *Id.* at 519-20.

-10-

We noted in *Sharpe* that good cause to depart from *stare decisis* exists when governing decisions are unworkable or badly reasoned. *Id.* at 520. Defendant here has not shown that this is the case with our decision in *Metcalfe*. Defendant merely prefers that this court adopt a different approach to claims of ineffectiveness of counsel during jury selection because some federal court circuits and a handful of state courts have done so. This hardly constitutes a groundswell of opposition to this court's reasoning in *Metcalfe*.

In addition, it appears to us that the analysis defendant favors amounts to little more than an end run around *Cronic*. Once it is determined that counsel was deficient for not striking a biased juror, prejudice is presumed because the defendant was deprived of an impartial jury and that makes the trial fundamentally unfair. Thus, only the deficient performance prong of the *Strickland* test is considered, the defendant does not have to actually demonstrate prejudice, and a new trial is required. This court rejected the defendant's *Cronic* argument in *Metcalfe*, 202 Ill. 2d at 560, and we similarly reject defendant's indirect attempt to revisit that argument here.

We now turn to defendant's argument that his trial counsel was ineffective for failing to seek juror A.C.'s removal from the jury. As stated above, counsel's actions during jury selection are generally considered a matter of trial strategy. Accordingly, counsel's strategic choices are virtually unchallengeable. *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

Defendant initially argues that *voir dire* is not "exempt" from a *Strickland* analysis. We point out, however, that this court has never held that an attorney's performance during *voir dire* is not subject to scrutiny under *Strickland*, nor does defendant cite any case from this court so holding. Rather, we have recognized, as have other reviewing courts, that decisions made during jury selection involve trial strategy to which courts should be highly deferential. *Strickland* itself emphasized the deference due counsel's strategic decisions:

> "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.

-11-

[Citation.] A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See *Michel v. Louisiana*, [350 U.S. 91, 101 (1955)]." *Strickland*, 466 U.S. at 689.

Defendant portrays A.C. as unequivocally biased against him. In doing so, defendant focuses only on the last few answers A.C. gave in response to trial counsel's questions. This selective focus on those answers given by A.C. that suit defendant's argument skews the analysis of whether trial counsel was deficient. The entire *voir dire* of A.C. should be considered in evaluating whether and to what extent A.C. exhibited bias against defendant.

Even after saying that he believed sex offenders should be locked up for life, A.C. stated that, notwithstanding that belief, he would be able to listen to the evidence and render a decision apart from the sex offender issue. He said that he did not think a sex offender background would influence his decision on the case. Not satisfied with that answer, defense counsel pressed A.C. to state unequivocally that such a background would not influence his decision. Only then did A.C. state that he could not be fair with the case. Other prospective jurors also expressed negative feelings about sex offenders. Trial counsel exercised peremptory challenges to some, but not all, of these jurors. For example, juror 41 stated that he had young children at home. He was uncertain whether he could be neutral in making a decision about a sex offender. Defense counsel exercised a peremptory challenge to this juror. Juror 120 stated that a member of his family had an experience with a sex offender some years ago. When asked if that would affect him if he were dealing with a sex offender on an issue that had nothing to do with a sex offense, this juror stated that it probably would not. Defense counsel did not exercise any challenge to juror 120.

-12-

Thus, counsel was sensitive to the fact that revealing defendant's sex offender status might give rise to doubt on the part of some venire members that they could be fair and impartial. Defendant's attorney was faced with a difficult case, given the strong evidence against defendant, and his chosen strategy reflected that difficulty. Highlighting defendant's sex offender status was a risky choice, given largely negative views of sex offenders by the general public. Based upon his decisions as to when to exercise peremptory challenges, it does not appear that counsel expected prospective jurors to be able to completely put those views aside.

Considering the entire *voir dire* of A.C. in context, it is possible that defendant's trial counsel decided that A.C. was not unequivocally biased. In addition, there were other factors that counsel may have taken into consideration, such as the fact that A.C. was not a native of this country and that he had had encounters with law enforcement officers in connection with his two speeding tickets. Attorneys consider many factors in making their decisions about which jurors to challenge and which to accept. As we have stated, this is part of trial strategy, which is generally not subject to challenge under *Strickland*. Reviewing courts should hesitate to second-guess counsel's strategic decisions, even where those decisions seem questionable.

In *People v. Begay*, 377 Ill. App. 3d 417 (2007), the defendant challenged his trial attorney's failure to seek removal of a juror for cause. During *voir dire*, the juror stated that her mother had been assaulted at knifepoint during a robbery. When the trial court asked the juror whether that experience would affect her ability to be fair and impartial, the juror said it would. The court then stated, "All right. So you wouldn't be fair, either?" The juror replied, "No." *Id.* at 423. In rejecting the defendant's argument that her counsel's performance was deficient under *Strickland*, the appellate court theorized that defense counsel could have believed that the juror would sympathize with the defendant, who claimed that when the offenses occurred, she was being attacked by a knife-wielding aggressor. Thus, the appellate court found trial counsel's decision to be a strategic one. *Id.*

Here, A.C., like the juror in *Begay*, stated that he could not be fair. However, unlike the juror in *Begay*, A.C. had earlier stated that he could be fair and that he believed he could put aside his prejudice against sex offenders in defendant's case because no sex offense was

-13-

involved. While some might find defense counsel's failure to challenge A.C. questionable, this alone is insufficient to find that counsel's conduct was deficient under *Strickland*. In addition, at the time of A.C.'s questioning, defense counsel had two remaining peremptory challenges and three more jurors remained to be seated, as well as an alternate. Under these circumstances, given A.C.'s conflicting answers regarding his impartiality, we cannot say that counsel's decision to reserve his two remaining peremptory challenges was unreasonable. Thus, we disagree with defendant that A.C. was "plainly and deeply biased," and we conclude that counsel's actions were a part of his trial strategy and were not deficient under *Strickland*.

Defendant argues that *Metcalfe* is distinguishable because this court found that the prospective juror there, Grevus, could have been biased against the State and not the defendant; thus, the *Metcalfe* juror's bias was less personal than the alleged bias of A.C. here. However, the bias of the juror in *Metcalfe* was very personal. She had been a crime victim and had had an unfavorable experience at the trial based on her cross-examination by the defendant's counsel. While it is true that Grevus might have been prejudiced toward the criminal justice system as a whole based on the fact that her attacker was not convicted, she also may have been prejudiced against defendants and defense attorneys. Unlike the juror in the instant case, Grevus was definite that her experiences would affect her ability to be fair and impartial. A.C. here at first said he could set aside his view of sex offenders. Taking his entire *voir dire* questioning into account, A.C.'s expression of bias was not unequivocal. Thus, we do not find *Metcalfe* distinguishable on this basis.

Accordingly, we conclude that trial counsel's failure to challenge juror A.C. was not objectively unreasonable and that defendant has failed to demonstrate that counsel's performance was deficient under *Strickland*.


CONCLUSION

For the reasons stated, we decline to overrule our decision in *Metcalfe*. Further, we conclude that the failure of defendant's trial attorney to challenge juror A.C. during *voir dire* was not objectively unreasonable. Therefore, we affirm the judgment of the appellate

court.

Appellate court judgment affirmed.

CHIEF JUSTICE KILBRIDE, specially concurring:

Although I agree with the majority that defendant has failed to make a sufficient showing of ineffective assistance of counsel, I disagree with its reliance on the first *Strickland* prong, addressing instead only the objective reasonableness of trial counsel's performance. Because the majority does not reach the merits of the second *Strickland* prong, requiring a showing of prejudice, its lengthy initial discussion of the proper standard of review for the prejudice prong appears to be unnecessary, as Justice Karmeier notes in his special concurrence. See slip op. at 6-11. As Justice Karmeier correctly recognizes, if the majority does not address the merits of the prejudice prong, its discussion of the standard of review applicable to that prong is unnecessary. Slip op. at 15 (Karmeier, J., specially concurring). I do not join Justice Karmeier's special concurrence, however, because I believe the court should have limited its discussion to the prejudice prong.

The prejudice prong should have been addressed by the majority for two reasons. First, the pressing need in both our appellate court and the appellate bar for guidance on the proper standard of review of the *Strickland* prejudice prong was a probable factor in this court's decision to allow defendant's petition for leave to appeal. Indeed, defendant specifically asked us to reconsider our decision in *Metcalfe* because subsequently "other courts have held that a biased juror is inherently prejudicial." Slip op. at 8. If the need for guidance on these questions were not a significant factor in allowing defendant's petition, the majority likely would not have discussed the applicable standard of review without also addressing the merits of the prejudice prong.

If the parties' prejudice prong arguments are not reached, the overall utility and precedential value of our decision will be severely limited because our standard of review discussion will be rendered mere *dicta*. If, however, this court reaches the merits of defendant's

-15-

prejudice prong argument, then the majority's extensive and persuasive discussion of the applicable standard of review becomes an integral part of our analysis, delivering vital guidance to our appellate court and bar.

Second, in addition to guidance, a discussion of the prejudice prong rather than the performance prong would strengthen this court's decision. The greatest weakness in the majority's analysis is its failure to explain fully how accepting a potentially biased juror could be a "reasonable trial strategy," as Justice Freeman notes in his dissent (slip op. at 23 (Freeman, J., dissenting, joined by Burke, J.)). Based on my view that some of A.C.'s answers were not clearly responsive and others created unresolved conflicts in his position, I disagree with the dissent's contention that the record must be read to show A.C.'s bias (slip op. at 23 (Freeman, J., dissenting, joined by Burke, J.)). I agree with the dissent, however, that here it is exceedingly difficult to justify retaining even a potentially biased juror. This difficulty is further multiplied when defense counsel chooses not to use either of his remaining peremptory challenges to remove the juror.

An examination of the merits of the prejudice prong would both eliminate this weakness in the analysis and logically proceed from our earlier discussion of the standard of review for that prong. Rather than focus on establishing the reasonable probability that he would not have been convicted without A.C. on the jury, defendant appears to rely on his argument that we should reconsider our decision in *Metcalfe*. After carefully analyzing this argument, the majority rejected it (slip op. at 11) and made clear that prejudice will not be presumed even if "it is determined that counsel was deficient for not striking a biased juror" (slip op. at 11). Defendant still must show "a reasonable probability that the result of the proceeding would have been different." Slip op. at 6. Without that showing, he cannot meet his burden on review. Based on my reading of A.C.'s statements and defendant's arguments, defendant has failed to overcome his burden of showing a reasonable probability that A.C.'s alleged bias altered the outcome of the trial.

Thus, while I agree with the majority's result and its analysis of the standard of review under the prejudice prong, I cannot support its analysis of the performance prong. Accordingly, I respectfully concur in the majority's judgment but not its full analysis.

-16-

JUSTICE KARMEIER, specially concurring:

Because I agree with the majority's determination that defendant has failed to demonstrate deficient performance of counsel during *voir dire*, I find the majority's discussion of prejudice unnecessary and therefore I see no need to take a position for or against the views expressed in that discussion. Only if the majority had determined counsel's performance was deficient, resulting in the seating of a biased juror, would it be necessary to reconcile *Metcalfe*'s application of the prejudice prong of *Strickland* with precedents of this court, and the United States Supreme Court, suggesting that the service of one biased juror on the jury would be plain, structural error warranting automatic reversal.


JUSTICE FREEMAN, dissenting:

A little over three months ago, this court strongly assured that, if facts demonstrate that a defendant has been tried by a biased jury, it "would not hesitate to reverse defendant's conviction, as a trial before a biased jury would constitute structural error." *People v. Thompson*, No. 109033, slip op. at 9 (Oct. 21, 2010) (quoting *People v. Glasper*, 234 Ill. 2d 173, 200-01 (2009)). The indisputable facts of this case demonstrate that the jury that decided defendant's case included a biased juror. The juror in question made it clear during *voir dire* that he believed sex offenders like defendant should be locked up for life. This same juror also unequivocally stated that he could not be fair in cases involving sex offenders, like defendant. And yet, the court does not hesitate to affirm this conviction. Because this juror's presence on the jury violated defendant's right to an impartial jury, a new trial is required. I therefore dissent.

The sixth amendment guarantees the right to an impartial jury to all persons accused of crimes, and the fourteenth amendment extends this guarantee to defendants tried in state courts. *Duncan v. Louisiana*, 391 U.S. 145, 149 (1968). Apart from granting the right to an impartial jury trial, the sixth amendment further entitles every criminal defendant to effective legal counsel. Defendant contends that it was his counsel's ineffectiveness that prevented him from receiving

the impartial jury to which he was entitled under the constitution.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-part test for analyzing claims of ineffective assistance of counsel. See also *People v. Albanese*, 104 Ill. 2d 504 (1984) (adopting *Strickland* test in Illinois). In order to show counsel was ineffective for failing to object to the presence of certain persons on the jury, defendant must prove "counsel's representation fell below an *objective* standard of reasonableness." (Emphasis added.) *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In addition, defendant must show counsel's deficient performance prejudiced the defense. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Because a defendant must satisfy both components of the *Strickland* test, the failure to establish either is fatal to the claim. *Id.*

Performance Prong

The court resolves defendant's claim solely on the basis of his failure to establish deficient performance, holding that the juror in question was not biased and that, in light of the entire *voir dire*, "it is possible that defendant's trial counsel decided that [the juror] was not unequivocally biased." Slip op. at 13. The court further concludes that because attorneys consider many factors in making their decisions about which jurors to challenge and which to accept, counsel's decision in this case "is part of trial strategy." *Id.* As such, his decision is generally not subject to challenge under *Strickland*, which means that this court "should hesitate to second-guess" the decision. *Id.* I disagree with this analysis because it transforms the deference afforded counsel's decision into nothing more than a judicial rubberstamp of counsel's actions. While courts should, of course, be wary of second-guessing counsel's action, that hesitancy does not mean turning a blind eye to deficiencies in performance that render the resulting trial constitutionally flawed.

It goes without saying that "[a]mong the most essential responsibilities of defense counsel is to protect his client's constitutional right to a fair and impartial jury by using *voir dire* to identify and ferret out jurors who are biased against the defense."

*Miller v. Francis*, 269 F.3d 609, 615 (6th Cir. 2001); see *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973) ("The primary purpose of the voir dire of jurors is to make possible the empanelling of an impartial jury through questions that permit the intelligent exercise of challenges by counsel."); see also *Rosales-Lopez v. United States*, 451 U.S. 182, 188 (1981) (acknowledging that *voir dire* "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored"). Under *Strickland*, defense counsel, however, is granted deference when conducting *voir dire*. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "An attorney's actions during *voir dire* are considered to be matters of trial strategy. [Citation.] A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness." *Id.* Despite this strong presumption that counsel's decisions are based on sound trial strategy, it is insufficient for counsel to simply articulate a reason for an omission or act alleged to constitute ineffective assistance of counsel. "The trial strategy itself must be objectively reasonable." *Miller* 269 F.3d at 616.

Because defendant's claim for ineffective assistance of counsel is based on his trial counsel's failure to strike a biased juror, defendant must show that the juror was actually biased against him. *Hughes*, 258 F.3d at 458 (quoting *Goeders v. Hundley*, 59 F.3d 73, 75 (8th Cir. 1995), citing *Smith v. Phillips*, 455 U.S. 209, 215 (1982)). Generally, a juror's "express doubt as to her own impartiality on *voir dire* does not necessarily entail a finding of actual bias," and the United States Supreme Court has routinely "upheld the impaneling of jurors who had doubted, or disclaimed outright, their own impartiality on *voir dire*." *Id.* (analyzing cases). What makes this case different from those cases where the empaneling of jurors who have indicated bias have been upheld is that, in such cases, the challenged jurors gave some subsequent reassurance of impartiality or were sufficiently rehabilitated by counsel with follow-up questions. See *Miller v. Francis*, 269 F.3d 609 (6th Cir. 2001). However, a different result obtains when follow-up questioning does not result in either a reassurance of impartiality or rehabilitation.

*Hughes v. United States*, 258 F.3d 453 (6th Cir. 2001), illustrates these principles. There, the defendant was tried for theft of

government property. During *voir dire*, a juror indicated that because of her family ties with law enforcement officers, she "did not think" she "could be fair." *Hughes*, 258 F.3d at 455. The trial judge replied "You don't think you could be fair?" to which the juror simply responded, "No." *Hughes*, 258 F.3d at 456. The court of appeals held that counsel's failure to strike the juror constituted ineffective assistance of counsel. Actual bias was present because there was no follow-up to the juror's statement that she "could not be fair." According to the court, when left with only a statement of partiality without a subsequent assurance of impartiality or rehabilitation through follow-up questions, juror bias can always be presumed from such unequivocal statements. *Hughes*, 258 F.3d at 460.

  The federal courts have spoken at length about jurors' phrases such as "I think I can be fair," noting that such statements "are not necessarily construed as equivocation." *Miller v. Webb*, 385 F.3d 666, 675 (6th Cir. 2004). In *Miller v. Webb*, for example, the court acknowledged "venire members commonly couch their responses to questions concerning bias in terms of 'I think.' Therefore, the use of such language cannot necessarily be construed as equivocation. [Citation.] For a juror to say, 'I think I could be fair, but ...,' without more, however, must be construed as a statement of equivocation. It is essential that a juror swear that [she] could set aside any opinion [she] might hold and decide the case on the evidence." (Internal quotation marks omitted.) *Miller*, 385 F.3d at 675. Thus, when a juror makes a statement that she "thinks she can be fair," but immediately qualifies it with a statement of partiality, courts presume actual bias because proper juror rehabilitation and juror assurances of impartiality are absent. *Miller*, 385 F.3d at 675. This is so because courts have recognized that the sixth amendment guarantees the right to a jury that will hear the case impartially, not one that "tentatively promises to try." *Wolfe v. Brigano*, 232 F.3d 499, 502-03 (6th Cir. 2000).

The Seventh Circuit has also acknowledged the problems inherent with juror statements regarding the ability to be fair. In *Thompson v. Altheimer & Gray*, 248 F.3d 621 (7th Cir. 2001), the court held that a trial judge committed error by failing to strike for cause a juror whose responses to *voir dire* questioning manifested a degree of bias. The juror stated the following during *voir dire* questioning: "I think I bring a lot of background to this case, and I can't say that it's not

going to cloud my judgment. I can try to be as fair as I can, as I do every day." *Id.* at 624. The trial judge in reviewing the statements noted that the juror "said she would try to be fair, but *** expressed no confidence in being able to succeed in the attempt." (Emphasis omitted.) *Id.* at 626. Judge Posner, writing for the court, which was unanimous on this issue, noted that if the juror had "said she could *not* be fair, the judge would of course have had to strike her for cause." (Emphasis in original.) *Id.*

Challenges for cause are subject to approval by the trial court, and the court must excuse a prospective juror if actual bias is discovered during *voir dire*. As the foregoing discussion makes clear, notwithstanding the general deference given to trial counsel's strategic decisions, courts will find deficient performance under *Strickland* if an impaneled juror's honest responses to questions on *voir dire* would have given rise to a valid challenge for cause.

The court today does not acknowledge any of the foregoing principles and does not review the *voir dire* in light of them. The *voir dire* at issue in this case began with the judge asking general questions about the juror's ability to be fair. At this point, there had been no mention of registered sex offenders, but that changed once defense counsel brought up the subject of fairness to registered sex offenders to the juror:

> "[Defense counsel]: I will ask a question that seems to be getting concern here. If you are aware of somebody who is a registered sex offender, how do you feel about that?
>
> A. Feel should be locked up for life.
>
> Q. Locked up for life. What if the law permitted that he not be locked up for life or she not be locked up for life? Do you still think that should be the case? Do you think you would be able to listen to a case and render a judgment on a case that's separate and distinct from the sex offender case?
>
> A. Yes.
>
> Q. Even though that person may have that background?
>
> A. Yes.
>
> Q. Is that background going to influence you at all do you believe in your decision in this case?

A. I don't think so.

Q. You don't think so?

A. No.

Q. Can you be more specific? Can you say that it's not going to?

A. No.

Q. You cannot?

A. No. I said it's not going to change. I cannot be fair with the case.

Q. You can be fair or you cannot?

A. No, I cannot be fair.

Q. You can be fair?

A. No, I cannot be fair. I could not be fair also."

It is clear that once the juror stated that sex offenders should "be locked up for life," defense counsel attempted to rehabilitate the juror in the manner set forth in the cases I discussed earlier. The problem, though, is that the juror was not amenable to rehabilitation. Indeed, the juror's response of "yes" to defense's counsel's ambiguous and compound questions cannot be read as an affirmative statement of impartiality because it is difficult to tell to which part of the compound questions he was responding. The most that could be said of that exchange is that it is ambiguous. Then, when the juror stated that he "didn't think" a sex offender background would influence him, defense counsel properly attempted to rehabilitate the juror by having him state affirmatively whether he could or could not be fair. The more defense counsel attempted to do this, the more the juror became unequivocal, repeating *four* times that he "cannot be fair." As the Sixth Circuit pointed out in *Miller*, when a juror, such as the one here, makes a statement indicating that he thinks he can be fair, but then immediately qualifies it with a statement of partiality, courts may presume actual bias due to the absence of proper rehabilitation and assurances of impartiality. *Miller*, 385 F.3d at 675. Once the juror here continued to state that he could not be fair, it amounted to an express and unrebutted admission of bias. In other words, there was an absence of an affirmative and believable statement that this juror could set aside his opinion of sex offenders and decide the case on the

evidence and in accordance with the law. This juror was unable to "swear that [he] could set aside any opinion [he] might hold and decide the case on the evidence." *Id.*

Defendant's reliance on this latter portion of the *voir dire* does not "skew[ ]" the analysis of whether counsel was ineffective, as the court today suggests. Slip op. at 12. Rather, it affirmatively demonstrates that, in response to follow-up questioning, the juror could not state for the record that he could be fair, but rather insisted that he could *not* be fair. Thus, I have no trouble concluding that this juror was actually biased against defendant. I therefore strongly disagree with the court's conclusion that the juror was not even biased to begin with, an incredible holding in light of the transcript. *Id.* at 14.

The court also states that because defendant's status as a sex offender was important to the defense's theory of the case, counsel's "strategic" decision to seat him is "virtually unchallengeable." *Id.* at 8. What this strategy was with respect to this juror is never explained by the court and for good reason: having a juror who has stated that (1) he cannot be fair toward sex offenders and (2) sex offenders should be locked up forever cannot *objectively* be considered reasonable trial strategy in a case involving a sex offender. In light of his statements, the juror could not have given *any* credence to the defense's theory. Indeed, according to this juror, defendant should not have even been walking the streets in the first place due to his prior sex offense conviction. "Virtually unchallengeable" does not mean that a court of review must suspend all disbelief. Rather, the reviewing court must be able to identify an "objectively" reasonable strategy (*Miller*, 269 F.3d at 616), a fact acknowledged by the Chief Justice in his special concurrence. See slip op. at 16 (Kilbride, C.J., specially concurring) (noting his disagreement with the court's "analysis of the performance prong"). The cases I cited earlier in this opinion amply demonstrate that *Strickland*'s deferential review of trial strategy does not require courts of review to accept without question that this was "reasonable" trial "strategy." I would therefore hold that counsel's failure to strike the juror constituted deficient performance under *Strickland*.

-23-

Prejudice Prong

This court, in both *Glasper* and *Thompson*, recognized that a trial before a biased juror would constitute structural error. "[S]tructural defects in the constitution of the trial mechanism *** defy analysis by 'harmless-error' standards." *Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991). The presence of a biased juror is no less a fundamental structural defect than the presence of a biased judge. *Id.* As the Eighth Circuit explained in *Johnson v. Armontrout*:

> "Trying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself. As the district court noted:
>
>> 'A defendant charged with a crime is entitled to an unbiased jury and is entitled to a presumption of innocence until such time as he is proven guilty beyond a reasonable doubt. Where you have jurors who before they have heard any evidence are convinced that the defendant is guilty [they are] clearly biased against the defendant. [This] denies the defendant the presumption of innocence and denies him a fair trial. Are only the innocent entitled to an unbiased jury or does the right of due process also entitle the guilty to an impartial trial? This court is of the opinion that both the innocent and the guilty are entitled to start a trial without any member of the jury convinced of the defendant's guilt.'
>
> *Johnson v. Armontrout*, No. 90–3426–CV–S–2, slip op. at 7 (W.D. Mo. June 18, 1991). We agree that, in the absence of a strategic motive, a defendant whose attorney fails to attempt to remove biased persons from a jury panel is prejudiced." *Johnson v. Armontrout*, 961 F.2d 748, 755 (8th Cir. 1992).

Essentially, *Armontrout* and the other federal cases like it, including those cited by defendant, view the resulting trial in instances where a biased juror has been impaneled as unreliable. It is unreliable because attempting to weigh this type of error against notions such as the weight of the evidence or the strength of the State's case cannot be done. Why? Because a biased juror is simply not open to weighing credibility or assessing fairly the competing theories of the case. Jury instructions that explain legal concepts such as credibility

determinations and burdens of proof are of no moment to the biased juror. Stated simply, the biased juror does not care at all about the relative strengths and weaknesses of the parties' evidence and pays no heed to jury instructions. As a result, all the factors that normally work to present a court of review with a "reliable" verdict on appeal are absent when a biased juror sits on a jury. The prejudice prong of *Strickland* recognizes as much–prejudice is established upon a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Our decision in *People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002), did not discuss the reliability aspect of the *Strickland* analysis. Defendant's argument, incorrectly characterized by the court as one that seeks the overruling of *Metcalfe* (slip op. at 8), merely asks this court to further clarify the prejudice prong in cases regarding the impaneling of a biased juror, as the federal courts have done. We need not overrule *Metcalfe* to do that, and it is unfair for the court today to suggest otherwise.[1]

In any event, it appears that a majority of this court adheres to the view that even if a biased juror sits on the jury, a defendant must nevertheless show a reasonable probability that the result of the proceeding would have been different. See slip op. at 6; see also *id.* at 16 (Kilbride, C.J., specially concurring). That viewpoint is incompatible with the United States Supreme Court's pronouncement that the participation of such a juror in a trial renders it unreliable and necessitates that the conviction be reversed. *United States v. Martinez-Salazar*, 528 U.S. 304, 316 (2000). It is this unreliability

---

[1]Why the court even reaches the question of whether *Metcalfe* should be overruled is never explained. The court holds that defendant has not satisfied the deficiency prong of *Strickland*. As noted earlier, the failure to establish either prong is fatal to an ineffectiveness claim. If counsel's decision to seat a juror the court believes was not even biased was objectively reasonable, then it need not speak to the issue of prejudice at all and its discussion of *Cronic* and *Metcalfe* is purely advisory. This court does not render advisory opinions. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 266 (2010) (Karmeier, J., concurring in part and dissenting in part, joined by Garman, J.). Justice Karmeier's special concurrence illustrates my point.

that satisfies the prejudice prong of *Strickland*. As the Supreme Court pointed out, the assessment of prejudice articulated in *Strickland* "proceed[s] on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695. Obviously, a biased juror cannot "impartially" apply the standards that govern the decision, and that is the prejudice that defendant has suffered. In this case, although defendant was constitutionally entitled to 12 impartial jurors, his attorney's conduct resulted in defendant receiving only 11 impartial jurors. See *Parker v. Gladden*, 385 U.S. 363, 366 (1966) (*per curiam*) (noting, defendant is "entitled to be tried by 12, not 9 or even 10, impartial and unprejudiced jurors"). The Supreme Court specifically warned against the mechanical applications of the standards announced in *Strickland*:

> "A number of practical considerations are important for the application of the standards we have outlined. Most important, in adjudicating a claim of actual ineffectiveness of counsel, a court should keep in mind that the principles we have stated do not establish mechanical rules. Although those principles should guide the process of decision, the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case, the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696.

The right to a trial before an impartial jury is the core principle of the American criminal justice system. The court's decision today leaves the unsettling impression that this most sacrosanct of rights is not being fully honored.

JUSTICE BURKE joins in this dissent.