2023 IL App (2d) 220027-U
No. 2-22-0027
Order filed February 9, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 17-CF-1962 |
| MARK A. HAMPTON, | ) ) ) | Honorable Donald M. Tegeler Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*: Trial counsel was not ineffective for failing to peremptorily challenge a potential juror in a case involving predatory criminal sexual assault of a child. Although the juror initially admitted to bias, she explained that she was concerned about the emotional impact of the victim's testimony and repeatedly assured the trial court that she could be fair and impartial. Thus, counsel could have concluded from the totality of the *voir dire* that the juror was not unequivocally biased.

¶ 2   Defendant, Mark A. Hampton, appeals his conviction, following a jury trial, of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2016)). He contends that his trial counsel was ineffective for failing to challenge a biased potential juror. Because the juror was

not unequivocally biased and the decision not to challenge her was a matter of trial strategy, we affirm.

¶ 3                                                    I. BACKGROUND

¶ 4      The State indicted defendant on four counts of predatory criminal sexual assault of a four-year old victim. Defendant opted for a jury trial.

¶ 5      During *voir dire*, the trial court asked the members of the venire if they understood and accepted that (1) defendant was presumed innocent, (2) the State must prove defendant guilty beyond a reasonable doubt, (3) defendant was not required to offer any evidence on his own behalf, and (4) if defendant chose not to testify, that decision could not be held against him. Juror 77 answered yes to all of those questions.

¶ 6      When asked if she had previously served on a jury, juror 77 answered yes. She also stated that her occupation involved the distribution of marijuana for medical purposes.

¶ 7      When the trial court asked juror 77 if there was anything about this case that caused her to think she could not be fair, she responded that her "anxiety kicked in" when she heard the charges because she knew survivors of sexual assault. She agreed with the court that this case was entirely different from the other situations she knew involving sexual assault. The court then asked juror 77 if she could be fair and impartial, listen to the evidence, weigh credibility, determine whom to believe and not to believe, and render a verdict. She answered yes. When the court asked juror 77 if having friends who were sexually abused would cause her to automatically vote guilty or not guilty, she said no. The court then asked her if she could be a fair and impartial juror and give both the State and defendant a fair trial. She said yes.

¶ 8      When the trial court asked the venire panel if anyone knew someone who had been sexually abused, juror 77 responded that she did. She clarified that the victims she knew were not her friends

but her nephews, whom a relative had abused. The court then commented, "Okay. I've asked you questions about that. So, you know, it kind of went, I guess for lack of a better word, both ways, correct?" Juror 77 responded, "Yes, unfortunately."

¶ 9      When defense counsel asked juror 77 if she could separate this case from her familial situation involving sexual abuse, she answered yes. Counsel then asked her if she understood that the facts of this case and the credibility issues it raised would be different from her own situation. She answered, "Yes, correct." When counsel asked if her anxiety would override her ability to sit and listen to the witnesses, she answered no. Counsel then asked her if she thought she could be fair and impartial, and she answered, "Yes, I do."

¶ 10     Neither defendant nor the State sought to challenge juror 77 for cause or peremptorily. Juror 77 was accepted as a member of the jury. The jury was not sworn in, however, before the lunch recess.

¶ 11     Immediately after lunch, the trial court notified the State and defendant that, during the lunch break, juror 77 approached the court's bailiff and said that she did not feel comfortable sitting on the jury but did not say why. The court commented that it did not know why juror 77 was uncomfortable. The State and defendant agreed they should question juror 77 about why she felt uncomfortable sitting on the jury.

¶ 12     The trial court advised juror 77 that the bailiff had reported that she was uncomfortable sitting on the jury. The court asked her why. She said, "I didn't realize how much anxiety I was going to have; but once I was selected, I was already palm sweaty, heart racing, since you read the charges." She added that she "[felt] like [she] wouldn't be a fair juror for this case." The court asked, "Can you tell me why you don't think you would be a fair juror? Would you favor one side over the other or just scared of what you might hear?" Juror 77 responded that she "could listen to

[the case] factually, but emotionally [she] still [felt] a certain type of way in cases like this." The court then asked her if she would automatically vote guilty or not guilty "just based upon the way [she] [felt]." Juror 77 answered, "To be honest, I do feel that I would—I can't say that I would a hundred percent." She added, "I don't know all the facts. But even just going in, I kind of already have a little—like a little biased feeling, I guess you can say." When the court asked her what "that bias [was]," juror 77 explained, "Especially when it involves children and these charges." She added, "It's just very personal and I get very emotional when it comes to cases like this." The court acknowledged that such cases can be very emotional and that some level of anxiety is expected for many courtroom participants.

¶ 13     The court then asked juror 77 if she could listen to the evidence and render a decision in the case. Juror 77 answered, "It would be hard for me to hear the kid's testimony for sure." The court agreed that the testimony would be "tough to hear" but asked juror 77 if she could listen to the evidence, determine the credibility of the witnesses, and render a verdict based on the evidence. She answered that she could. The court then asked her if she could give the court her attention for the next three days, listen to the facts, determine whom to believe and not to believe, apply the law to the facts, and render a verdict. Juror 77 answered yes. When the court asked her if she would hold the State to its burden of proof, she said yes. When the court asked her if she would automatically vote guilty just because defendant had been charged, she responded, "Not necessarily. I would have to hear all of the—you know, the whole story, the whole facts." Juror 77 agreed that defendant was presumed innocent and did not have to present any evidence. She also confirmed that she would be able to render a verdict based solely on the State's evidence if defendant presented none.

¶ 14    After the trial court's questioning, the State stated that it believed juror 77 could be fair and impartial. Defense counsel acknowledged that juror 77 indicated that she could be fair and impartial. Counsel added, "she indicated at the beginning that she was not going to be fair to one side, but then equivocated and came back." The court decided not to remove juror 77:

> "In talking to her, I think it's very emotional. These charges can be very emotional, but I think that she will sit here and do what she said, she'll listen to the facts and make a determination on the credibility. So I will not remove her from the jury at this point. She'll sit."

¶ 15    The jury found defendant guilty of all charges. Defendant filed a motion for a new trial, asserting, among other things, that the trial court erred in not removing juror 77. After reviewing the trial transcript, the court rejected that contention, noting that juror 77, while "equivocat[ing] at first," said that she would be fair, listen to the facts, and decide the case based on the facts. The court added that, after questioning juror 77, defense counsel did not object to her being on the jury. Further, the court noted that juror 77 stated that she could be fair, listen to the facts, and follow the court's orders. The court added: "And it appears that's what the jury did." Following the denial of his posttrial motion, defendant filed this timely appeal.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, defendant contends that his trial counsel was ineffective for failing to use a peremptory challenge against juror 77. For the following reasons, we disagree.

¶ 18    The two-prong test for assessing whether trial counsel was ineffective requires a defendant to show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced defendant in that, but for counsel's deficient performance, there is a reasonable probability that the result would have been different.

*People v. Jones*, 2012 IL App (2d) 110346, ¶ 68 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To meet the first prong, the defendant must overcome the strong presumption that counsel's conduct was sound trial strategy under the circumstances. *People v. Houston,* 226 Ill. 2d 135, 144 (2007).

¶ 19     A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined before trial. *People v. Manning*, 241 Ill. 2d 319, 330 (2011). *Voir dire* is conducted to assure the selection of an impartial jury, free from bias and prejudice, and to grant counsel an intelligent basis on which to exercise peremptory challenges. *Jones*, 2012 IL App (2d) 110346, ¶ 71. Generally, counsel's decisions during jury selection are considered a matter of trial strategy, and counsel's strategic choices are virtually unchallengeable. *Manning*, 241 Ill. 2d at 333. Attorneys consider many factors in deciding which jurors to challenge and which to accept, and "[r]eviewing courts should hesitate to second-guess counsel's strategic decisions [in jury selection], even where those decisions might seem questionable." *Manning*, 241 Ill. 2d at 335.

¶ 20     In assessing trial counsel's decisions regarding peremptory challenges, it is improper to focus on one answer or even a "few answers," as this approach could skew the analysis of whether counsel was deficient. *Manning*, 241 Ill. 2d at 334. Rather, the entire *voir dire* must be considered in evaluating whether and to what extent the potential juror exhibited bias against the defendant. *Manning*, 241 Ill. 2d at 334. Trial counsel may be found deficient for failing to exercise a peremptory challenge against a juror who expresses unequivocal bias against the defendant. See *Manning*, 241 Ill. 2d at 335, 337.

¶ 21     Thus, in viewing of the facts of this case, we are mindful that the decision whether to exercise a peremptory challenge is quintessentially a matter of trial strategy. As our supreme court

instructs, we must assess the totality of juror 77's responses in determining whether she was unequivocally biased such that counsel acted outside the realm of trial strategy in failing to use a peremptory strike against her.

¶ 22    Given the totality of the *voir dire* involving juror 77, she clearly was not unequivocally biased such that counsel was deficient in failing to peremptorily challenge her. During the general *voir dire* of the panel, juror 77 acknowledged that she understood that (1) defendant was presumed innocent, (2) the State must prove defendant guilty beyond a reasonable doubt, (3) defendant was not required to offer any evidence on his own behalf, and (4) if defendant chose not to testify, that decision could not be held against him. When the trial court asked juror 77 if there was anything about the case that would cause her to be unfair, juror 77 responded only that she would have anxiety because she knew survivors of sexual assault. More importantly, when the court asked her if she could be a fair and impartial juror who would listen to the evidence, weigh the credibility of the witnesses, and determine whom to believe and not believe, she answered yes. When the court asked her if having friends who were sexually abused would cause her to vote automatically one way or the other, she said no. When the court asked if she would be a fair and impartial juror and give both sides a fair trial, she said yes. When defense counsel asked juror 77 if she could separate this case from the situations involving sex abuse of her family members, she again answered yes. When counsel asked if she could be fair and impartial, juror 77 yet again answered yes. Her answers to the foregoing questions were all unequivocal. She did not show any bias or prejudice during this initial *voir dire*.

¶ 23    However, during the lunch break, before the jury was sworn in, juror 77 told a bailiff that she did not feel comfortable serving on the jury. Accordingly, the trial court resumed the *voir dire* of juror 77. When the court asked her why she felt uncomfortable sitting on the jury, juror 77's

immediate response was that, after being selected, she became very anxious. She added that she did not feel she could be a fair juror. When the court asked her why she thought she could not be fair, juror 77 responded that she could listen to the facts but was emotional about such cases. When the court asked her if she would vote automatically based on her feelings, she could not say a "hundred percent" that she would do so. Then she added that she had "like a little biased feeling, I guess you can say." When the court asked what her "bias" was, juror 77 explained that the case involved children and sexual abuse and that it was "very personal" and made her "very emotional." When the court asked her if she could listen to the evidence and render a decision, she answered that it would be hard for her to listen to the child's testimony. However, when the court asked her if she could listen to the evidence, determine witness credibility, and render a verdict based on the evidence, juror 77 unequivocally responded yes. When the court asked her if she could give her attention to the case for three days, listen to the facts, determine whom to believe and not believe, apply the law to the facts, and render a verdict, she unequivocally answered yes. She further reiterated that she (1) would hold the State to its burden of proof, (2) agreed that defendant was presumed innocent, and (3) would not automatically vote guilty just because defendant had been charged with sexual abuse. Juror 77's answers to the additional *voir dire* by the court collectively demonstrated that she would be a fair and unbiased juror. She suggested at one point that she might be biased. However, upon further questioning, she explained that she meant that she was very emotional and was experiencing anxiety about hearing the victim's testimony in a sexual abuse case. However, she clarified that she could be fair and impartial in assessing the evidence and rendering a verdict.

¶ 24    After the trial court completed its questioning, the State indicated that it thought juror 77 could be fair and impartial. Defense counsel acknowledged that juror 77 said she could be fair and

impartial. Counsel added that juror 77 initially indicated that she would not be fair, but then she "equivocated and came back." The court concluded that juror 77's hesitation was "emotional" and that she would still listen to the facts and determine the credibility of the witnesses. Based on the entire *voir dire*, particularly the extensive questioning of juror 77, we agree that she did not unequivocally indicate bias or prejudice regarding the case or defendant's guilt. Although defendant now focuses on juror 77's suggestion during the additional *voir dire* that she might not be fair, the record shows that the trial court found juror 77 to be concerned with her anxiety when hearing sexual-abuse evidence and *not* about any predisposition to find defendant guilty. Again, when we view her answers to various questions about bias and fairness during the entire *voir dire*, it is clear that she was neither biased nor unable to render a fair and impartial verdict. More importantly, it was certainly possible that counsel did not consider her unequivocally biased or incapable of impartiality. See *Manning*, 241 Ill. 2d at 335 ("Considering the entire *voir dire* of [the potential juror] in context, it is possible that defendant's trial counsel decided that [the juror] was not unequivocally biased."). Thus, counsel was not deficient in failing to use a peremptory challenge against juror 77.

¶ 25    Notably, our supreme court has found a defense counsel's failure to remove a juror to be a matter of trial strategy even when the juror made considerably stronger statements of bias or inability to be impartial than juror 77 made here. See *Jones*, 2012 IL App (2d) 110346, ¶¶ 74-75 (citing *Manning*, 241 Ill. 2d 319; *People v. Metcalfe*, 202 Ill. 2d 544 (2002)). As we noted in *Jones*, the *Manning* court held that, despite the potential juror giving conflicting answers about his impartiality and eventually claiming that he could not be fair, it was possible that the defense counsel decided that the juror was not unequivocally biased. See *Jones*, 2012 IL App (2d) 110346, ¶ 74 (citing *Manning*, 241 Ill. 2d at 335). In *Jones,* we also cited *Metcalfe*, 202 Ill. 2d 544, where

the supreme court held that, despite responses by a potential juror that she could not be impartial because of her experience as a crime witness, the defense counsel's decision not to remove the juror could be considered trial strategy because counsel possibly believed that the juror's bias might be against the criminal justice system, thus, favoring the defense. See *Jones*, 2012 IL App (2d) 110346, ¶ 75 (citing *Metcalfe*, 202 Ill. 2d at 562). Here, juror 77's statements did not approach the degree of bias or lack of impartiality expressed by the jurors in *Manning* and *Metcalfe*—which was held to *not* support those ineffectiveness claims therein. Thus, the same result must obtain here.

¶ 26    Based on the foregoing, we conclude that defense counsel's decision not to remove juror 77 was clearly a matter of trial strategy and, thus, did not rise to the level of constitutionally deficient performance. Because counsel's performance was not deficient, we need not consider whether any such deficiency was prejudicial.

¶ 27                                    III. CONCLUSION

¶ 28    For the reasons stated, we reject defendant's claim of ineffective assistance and therefore affirm the judgment of the circuit court of Kane County.

¶ 29    Affirmed.