FOURTH DIVISION
November 1, 2007

No. 1-05-2453

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | 02 CR 13079 |
| | ) | |
| SYLVIA BEGAY, | ) | Honorable |
| | ) | Daniel P. Darcy, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, Sylvia Begay, appeals her jury convictions for armed violence and aggravated battery and her sentence of 10 years' imprisonment for the armed violence count and a concurrent sentence of 5 years' imprisonment for aggravated battery. On appeal, defendant contends: (1) the circuit court erred in allowing prejudicial other crimes evidence where the State did not establish defendant's connection to the other crime; (2) defendant's counsel provided ineffective assistance when he failed to challenge a prospective juror who stated she could not be fair; (3) during closing arguments, the State improperly shifted the burden of proof to the defense; and (4) defendant's aggravated battery conviction and sentence must be vacated pursuant to the one-act, one-crime rule because it arose from the same act forming the basis for her armed violence conviction, and is a lesser-included offense of armed violence. We affirm the conviction and sentence for armed violence, vacate the conviction and sentence for aggravated battery, and correct the mittimus.

At trial, Terry Pringle (the victim) testified that he was employed as a police officer with the Chicago police department. He and defendant had a relationship for approximately 3 ½ years before the relationship ended in the early part of 2002. On May 1, 2002, around 12 a.m., the victim was

in his apartment with his sons Cory and Terry and a friend, Linda Thomas. He had been involved in a minor motorcycle accident a couple of days before, and Linda brought food for him and his sons. While Cory and Terry were in the living room watching television and eating, defendant, who lived in the same building, "banged" on the front door saying, "'Let me in, let me in.'" The victim opened the door "slightly" and defendant pushed her way into his apartment.

After entering the apartment, defendant headed toward the victim's bedroom, where she confronted Linda and asked her, "'Are you f---ing my man'?" Linda told defendant to mind her own business. Defendant walked out of the bedroom and headed toward the kitchen located in the back of the apartment. The victim then heard the opening of the kitchen drawer where he kept silverware, including knives. This drawer made a particular noise when opened because it was "off the hinge." Defendant called to the victim, saying she needed to talk to him. He found defendant in the den, which was located next to the kitchen, with her hands in the pockets of her trench coat.

The victim testified that he told defendant to leave and turned to switch off a light. As he turned again to face defendant, she hit his forehead with a knife blade. Part of the blade broke from the handle and stuck in his skull. The victim "faded" for a moment, then saw defendant run down the hall toward the front door. The victim caught up with her at the door. They wrestled, and defendant stabbed the victim with the remaining jagged edge of the knife, striking his head numerous times, tearing his sweatpants around the groin area, and ripping his shirt. After the victim wrestled the knife away from her, defendant ran down the stairs, screaming, " 'He got a knife, he got a knife, call the police.' " The victim told his sons to call the police and ambulance as he went into the bathroom to put a towel on his head. An ambulance transported him to Cook County Hospital, where he had

2

surgery to remove the blade from his head.

The victim acknowledged that defendant had filed an order of protection against him on July 5, 2001, but she had the order vacated on July 16, 2001. Defendant also informed the Office of Professional Standards that she wanted to drop all complaints against the victim; defendant signed a "drop complaint" form.

Linda Thomas testified that on the evening of April 30, 2002, she brought food over for the victim and his sons because the victim had been involved in a motorcycle accident several days earlier. She was at the apartment around midnight, May 1, 2002, in the victim's bedroom, when she heard a loud knock at the front door. Soon after, defendant entered the bedroom. Defendant asked Linda, " 'Are you f---ing [the victim]?' " to which Linda replied that her relationship with the victim was personal business. The victim asked defendant to leave, but defendant replied that she wished to speak privately with him and she left the bedroom and walked toward the back of the apartment. The victim eventually followed her. Linda then heard a sound "as if someone was being smacked" and of eyeglasses falling to the floor. She stated that she heard "shuffling of feet and scuffling at the door." She heard defendant scream and yell as she ran down the stairs. The victim told Linda to call an ambulance and asked her to bring him a towel. He then went into the bathroom and told Linda that he had been stabbed.

Cory Pringle testified that on May 1, 2002, he lived in the apartment with his father (the victim) and brother, Terry. Around 12 a.m., he and his brother were in the living room eating and watching television when he heard a "splatter" outside the window, of something hitting a car. About a minute or two later, someone pounded on the door and he recognized defendant's voice. The victim

opened the door "a little bit" and talked with defendant. Defendant, who was wearing a trench coat, pushed open the door and went into the victim's bedroom. Defendant then left the bedroom and went toward the kitchen area. Cory heard the "screech" of the utensil drawer in the kitchen, and then defendant called to the victim. A minute or two later, the victim left the bedroom and went to the back of the apartment, toward the kitchen.

Cory testified that soon after, he saw defendant running out of the apartment with the victim following. Cory passed the front entrance and saw the victim and defendant "rolling around" in the hallway. When the victim reentered the apartment, he had his hand over his head as he walked to the back of the apartment. Cory saw the victim as he was changing a towel he had wrapped around his head and Cory observed "blood dripping down." When Cory had an opportunity to go outside of the building, he saw that the victim's black Mazda had eggs splattered on it and that Linda's car also had been hit with eggs. Cory stated that he did not see anyone throw eggs at the victim's car, nor did he ever see defendant with eggs that day.

Cory's brother, Terry Jr., testified similarly to Cory.

Defendant testified that she had dated the victim from mid-1998 to May 1, 2002, but broke up the relationship several times during that period. When the victim threatened her in May 2001, she filed a complaint with the Office of Professional Standards after which the victim threatened her again for filing the complaint. Defendant then obtained an order of protection against him, but asked to vacate the order when he agreed to counseling.

On May 1, 2002, defendant went to the victim's apartment hoping to have sex with him. She saw the victim's car, but did not see any egg splattered on it. She knocked on the victim's door, and

4

when no one answered, she knocked harder. When the victim answered, he told defendant he had company but stepped aside as defendant entered the apartment. Defendant walked into the victim's bedroom and stated that they needed to talk. Defendant then asked Linda if she was sleeping with the victim. She also told Linda that the victim had hit her and made her have an abortion. Defendant and the victim then went to the den. In the den, defendant told the victim that their relationship was over. As defendant began to walk toward the front door, the victim grabbed her arm. Defendant told the victim she was going to call the police. As she walked out of the apartment, the victim hit her in the face and she fell to the ground. The victim continued to strike her and kick her and she called for help. Defendant saw what she thought was a gun in the victim's hand and struggled to grab the object because she believed he was going to kill her. Defendant eventually realized the object was a knife, and at one point, the victim appeared to jerk the knife toward his face. At that moment, defendant managed to escape and ran down the stairs.

The jury found defendant guilty of armed violence and aggravated battery. The trial court sentenced defendant to 10 years' imprisonment on the armed violence count and a concurrent 5 years' imprisonment on the aggravated battery count. Defendant filed this timely appeal.

First, defendant argues that the trial court erred in allowing prejudicial other crimes evidence involving the egging of the victim's and Linda's cars. Evidence generally is admissible if it is relevant, meaning the "fact or circumstance offered tends to prove or disprove a disputed fact or to render the matter at issue more or less probable." People v. Jones, 269 Ill. App. 3d 797, 803 (1994). However, evidence of other crimes defendant may have committed is not admissible if its only relevance is to show defendant's propensity to commit crime. People v. Sims, 244 Ill. App. 3d 966, 996 (1993).

Evidentiary rulings are within the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. People v. Franklin, 135 Ill. 2d 78, 96 (1990).

The State contends that defendant waived review of this issue because she failed to object when the evidence was presented at trial. See People v. Enoch, 122 Ill. 2d 176, 186 (1988) (in order to preserve an issue for review on appeal, a party must both object at trial and raise the issue in a posttrial motion). The record indicates that although defense counsel did not object immediately when the State presented evidence of the egging of the victim's car, counsel did object moments later when the State attempted to present evidence of eggs on Linda's car. Accordingly, the issue was properly preserved for review.

On the merits, the trial court committed no error in admitting the evidence that defendant egged the victim's and Linda's cars, as said evidence was relevant and admissible to establish defendant's guilt for aggravated battery. Defendant commits aggravated battery when, in committing a battery, she intentionally or knowingly causes great bodily harm or permanent disfigurement. People v. Farrell, 89 Ill. App. 3d 262, 264 (1980). Where, as here, defendant denies the intent to cause great bodily harm in an aggravated battery case, the State must prove defendant's intent to harm through circumstantial evidence. People v. Farrell, 89 Ill. App. 3d at 265. Here, Cory's testimony regarding the egging, specifically, that he heard a "splatter" outside the window moments before defendant appeared at their front door, and later noticed eggs smashed on the victim's car and on Linda's car, was relevant to the issue of whether defendant went to the victim's apartment as an angry aggressor or merely to have sexual intercourse with him. Therefore, the egging did not constitute other crimes evidence, but was circumstantial evidence relevant and probative to the issue of

defendant's intent when she visited the victim's apartment on May 1, 2002. The trial court did not abuse its discretion in admitting Cory's testimony and a photograph of the egged car. See also People v. Jones, 269 Ill. App. 3d 797, 804 (1994) (evidence of weapons and large amounts of cash found in defendant's basement was not other crimes evidence, but circumstantial evidence as it was relevant to prove defendant's intent to deliver a controlled substance).

Defendant further argues that the egging evidence was inadmissible because the State failed to show that defendant actually egged the cars. In a criminal prosecution, other crimes evidence is not admissible unless the State makes some showing that the other crime was actually committed and that the defendant took part. Wernowsky v. Economy Fire & Casualty Co., 106 Ill. 2d 49, 55 (1985). Whether a defendant committed the other crime may be proved by circumstantial evidence. Wernowsky, 106 Ill. 2d at 55. In this case, though, the egging incident was not other crimes evidence. See our discussion above. Moreover, the State did present circumstantial evidence that defendant egged the cars. Specifically, the State presented evidence that defendant and the victim previously had been involved in a stormy relationship, that defendant was familiar with the victim's car, that moments before defendant came to the door Cory heard a splatter sound of something hitting a car outside the window, and when he later ventured outside, Cory noticed the eggs on the victim's car and on Linda's car. Said evidence was sufficient to show that defendant egged the cars.

Next, defendant contends that her trial counsel was ineffective in not challenging juror Maricela Mendoza for cause. The United States Supreme Court outlined a two-prong test for determining whether counsel provided ineffective assistance: first, defendant must show that her counsel's performance fell below an objective standard of reasonableness; second, defendant must

show that she was so prejudiced by counsel's substandard performance that she was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). Trial counsel's decisions are given great deference by the courts, and in claiming ineffective assistance, defendant must overcome a strong presumption that the actions challenged constitute sound trial strategy. Strickland, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Defendant contends that her counsel should have challenged juror Mendoza for cause because she stated during voir dire that she could not be fair and impartial. The juror made her statement during a discussion of her mother's assault at knifepoint during a robbery five years ago:

"THE COURT: All right. And were you a witness to that at all?

JUROR MENDOZA: I was not, but I did go to her, and on occasions to court.

THE COURT: All right. So somebody was arrested in the case?

JUROR MENDOZA: Yes.

THE COURT: All right. Would that experience affect your ability to be fair and impartial in this case?

JUROR MENDOZA: Yes.

THE COURT: All right. So you wouldn't be fair, either?

JUROR MENDOZA: No."

Our supreme court has held that "defense counsel's conduct during jury voir dire involves matters of trial strategy that generally are not subject to scrutiny under Strickland." People v. Metcalfe, 202 Ill. 2d 544, 562 (2002). In the present case, defense counsel could have determined that the juror, whose mother had been attacked by a knife-wielding assailant, would sympathize with

8

the defendant, a woman who similarly alleged that she was the victim here of a knife-wielding aggressor who attacked her. Defense counsel could have theorized that any prejudices the juror harbored as a result of the attack on her mother would inure to the benefit of the defendant, a woman like her mother who claimed to have been fighting back against an attacker who had assaulted her at knifepoint. Accordingly, defense counsel's decision not to challenge the juror for cause was a matter of trial strategy and does not run afoul of Strickland.

Defendant also contends that she was denied a fair trial when the prosecutor commented during closing arguments that her defense amounted to a conspiracy by the State's witnesses, improperly shifting the burden of proof to defendant. Defendant waived review by failing to object at trial. Enoch, 122 Ill. 2d at 186. On the merits, the State has wide latitude in closing argument and may argue facts and reasonable inferences drawn on the evidence. People v. Kliner, 185 Ill. 2d 81, 151 (1998). The State may not effectively shift the burden of proof by improperly arguing to the jury that it must find that the State's witnesses were lying in order to acquit the defendant. People v. Ridley, 199 Ill. App. 3d 487, 493 (1990). However, the State may respond to comments made by defense counsel that clearly invite a response. Kliner, 185 Ill. 2d at 154.

During his closing argument, defense counsel stated:

"Terry Pringle, Linda Thomas, Terry Pringle, Jr., Corey Pringle. They talk about when [defendant] comes in. She goes straight to the bedroom. *** [T]hey make big – a big to do about rustling of the drawer in the kitchen. That rustling of the drawer and the silverware. And that ladies and gentlemen is supposed to be where [defendant] went into their kitchen *** and got out that weapon that they are showing you. That rustling of the

9

broken drawer all four of those witnesses testified to that. Those four people were never told not to discuss this case among themselves. Do not think for one moment that they haven't since May 1st of 2002 talked about what happened that incident [sic] and about this stabbing and cutting and about the knife and what have you. They did. That's why they talked about the rustling of the drawer. "

In response, the prosecutor made the following comment with which defendant takes issue:

"Let's talk about the conspiracy that's going on here. Corey is in on it. Terry, Jr. is in on it. Police is in on it. Everybody is on this conspiracy to stick it to [defendant]. When the only sticking that occurred is when she took that knife and embedded it in Terry Pringle's head. They are going to make up what they said out there. That's basically what he is saying. He is saying they lied to you. If they are really going to make a conspiracy among all of them, couldn't they make it a little better. Wouldn't every single one say I saw her stab my father in the head. I was there. It happened. I saw it right there. You know why they didn't tell you that, because they're telling you the truth. They saw what they saw. And they came into court and they told you that. They're not making anything up. If they are really going to make a conspiracy they all would have told the same thing; I saw her stab him. But they didn't because they're telling the truth. They have nothing to hide. "

Defense counsel's comments during closing argument regarding a conspiracy by the State's witnesses clearly invited the State's response. We find no error.

Finally, defendant contends that her conviction and sentence for aggravated battery must be vacated pursuant to the one-act, one-crime rule, since it arose from the same physical act forming the

basis of her armed violence conviction and is a lesser-included offense of armed violence. The State agrees. Therefore, we vacate the conviction and sentence for aggravated battery and correct the mittimus.

Defendant's conviction and sentence for armed violence is affirmed; defendant's conviction and sentence for aggravated battery is vacated; mittimus corrected.

Affirmed in part and vacated in part; mittimus corrected.

GALLAGHER and O'MARA FROSSARD, JJ.'s concur.