2023 IL App (1st) 220160-U

No. 1-22-0160

Order filed June 9, 2023

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 DV 61545 |
| | ) | |
| LLOYD B. JEFF, | ) | Honorable |
| | ) | Tiana S. Blakely, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Delort and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court did not abuse its discretion in allowing the State to amend the complaint prior to the start of trial; and the State proved defendant guilty beyond a reasonable doubt of domestic battery. Affirmed.

¶ 2    Following a bench trial, defendant, Lloyd Jeff, was found guilty of domestic battery. He was sentenced to six months of conditional discharge and ordered to complete an anger management course through social services. On appeal, Lloyd contends that: (1) his conviction should be reversed because the State's amendment to the complaint on the day of trial was a speedy

trial violation; and (2) the State failed to prove him guilty beyond a reasonable doubt of domestic battery. For the following reasons, we affirm.

¶ 3                                        I. BACKGROUND

¶ 4      On November 29, 2020, Lloyd was charged by misdemeanor complaint with domestic battery in that he "knowingly made physical contact of an insulting nature with LISA JEFF, the wife of said defendant, in that Lloyd Jeff struck Lisa Jeff in the face with a closed fist, causing her forehead to swell." See 720 ILCS 5/12-3.2(a)(2) (West 2020).

¶ 5      On the day of trial, July 6, 2021, the following exchange occurred:

| | |
|---|---|
| "COURT: | Mr. Jeff, you're currently charged with one count of domestic battery. Are there any amendments to the complaint? |
| ASA: | Yes, your honor. We're amending from (a)(2) to (a)(1). |
| COURT: | Any objection? |
| DEFENSE: | No objection, judge. |
| COURT: | Leave to amend criminal complaint is granted. Mr. Lloyd, you are now charged with a domestic battery in that on or about November 29th of 2020, at the location of 3212 West 155th Street, you committed the offense of domestic battery in that you knowingly made physical contact of an insulting nature with Lisa Jeff, a wife. And said defendant in that Lloyd Jeff struck Lisa in the face with a closed fist causing |

2

her forehead to swell. State, did you have to amend

any of this language in order to amend to (a)(1)?

ASA: No, your honor.

COURT: Just asking. Sir, do you understand the charges

placed against you?

DEFENDANT: Yes, your honor."

¶ 6      The following evidence was then presented during the bench trial. Lisa testified that on the date in question, at approximately 8:53 a.m., Jeff became upset over an air mattress that she had purchased over two years before. Lisa had taken it and used it on a holiday weekend when she was staying with her mother. Back at home, Lloyd asked for the mattress and when Lisa said she took it, Lloyd "became very enraged and upset, told me that I'd better get the air mattress back or give him the money to buy another air mattress." When Lisa told him she would not, Lloyd "came into the room that I was staying in." Lisa testified that they lived in the same house but did not share a room "because we were having severe issues." She stayed in the master bedroom, and he stayed in one of the extra bedrooms.

¶ 7      Lisa testified that Jeff then grabbed her work computer and tried to leave with it. She stated:

"I kept telling him not to take the computer, he continued to cuss, call me all kinds

of bitches as he always does. And [he] kind of bopped like to get me out of the way,

he hit me up side the head and put a nice big knot on my forehead."

¶ 8      Lisa testified that she was trying to block him from leaving the room because she did not want him to take the computer "and break it because when he gets upset, he has the habit of breaking and destroying things." When asked what arm Jeff hit her with, Lisa responded that she was standing directly in front of him so it may have been his left but she did not remember. She

stated that he hit her with enough force to knock her back and she remembered feeling a little dizzy. She did not lose consciousness but had a "huge knot on my head."

¶ 9     Lisa stated that Jeff continued to "cuss and scream and yell." He left the room and then came back and kicked the door. She grabbed her phone and went to dial 9-1-1. Jeff came back and tried to get the phone from her, so she closed the phone, "put the phone on my chest, holding it, literally laid down on the bed on top of my phone. He jumped on top of me, hitting me and wrestling with me until he snatched the phone out of my hands."

¶ 10    Lloyd walked out of the room, then came back in and threw the phone back at Lisa. She became scared because she knew Lloyd kept a gun in his room. When she grabbed her phone, she realized she had already dialed 9-1-1, and that the operator had heard the altercation. She then spoke to the 9-1-1 operator.

¶ 11    The 9-1-1 tape was then admitted into evidence.

¶ 12    Lisa testified that she ran out of the house after speaking to the 9-1-1 operator and got in her car. She drove down the street and waited for the police to arrive. When she saw the police arrive, she came back to the house.

¶ 13    When asked if she sustained any physical injuries from the incident, Lisa stated, "I had a severe knot right on the top of my forehead. I had a severe headache for a couple of days. It was a nice lump on my head. The officer noticed it." She stated that she had a lot of soreness and pain in her shoulder and back after Lloyd had jumped on top of her when he was trying to get the phone. She took pictures of her forehead when she was in the car waiting for the police to arrive. She also took some pictures of her forehead after the police had taken Lloyd away. The pictures were all taken on the day of the incident. The photos were admitted into evidence.

¶ 14    Lisa testified that she was fearful of Lloyd and that she currently had a durational order of protection in place that she was seeking to extend.

¶ 15    On cross-examination, Lisa stated that she was offered medical attention, but she refused it. She had not officially filed for divorce but did obtain a lawyer. She had exclusive possession of the marital home through the order of protection.

¶ 16    Lisa also stated on cross-examination that she had bought the air mattress. Because Lloyd did not work, she paid for everything. When Lloyd took her work computer, she blocked the door because she did not want him to break the computer.

¶ 17    Lisa also testified about two other incidents where she had called the police: July 23, 2020, and September of 2019. She called in 2019 because Lloyd was breaking things in the house, but the operator said if the property was in his name, he could break the property. In July 2020, Lisa called the police because he was breaking things again. He pushed her out of the way but did not hit her.

¶ 18    Lloyd then testified on his own behalf. He stated that he was a deputy sheriff with the Cook County Sheriff's Department for 20 years but was currently unemployed. On the date in question, he asked Lisa where she had put the air mattress he slept on, and she told him she gave it to someone who needed it more than he did. He told her it was not right to take things she bought for him as gifts. Then he grabbed her computer.

¶ 19    Lloyd testified that Lisa then attacked him and started kicking him. He held her off, then picked up another computer and asked, "what if I take both computers?" Then she kicked him in the knee. Lloyd stated that he never made contact with Lisa, he did not punch her, and he did not "identify with men who hit women."

¶ 20    On cross-examination, the 9-1-1 call was replayed. The State asked Lloyd if he could hear Lisa saying, "get off of me." Lloyd responded that he did but that she "did that to make her call seem more credible."

¶ 21    Officer Short of the Markham Police Department testified that on August 12, 2020, he responded to a call at Lisa and Lloyd's residence. They were in the driveway having a verbal altercation. There was no property damage.

¶ 22    At the close of evidence, the trial court found that the State met its burden of proof beyond a reasonable doubt and found Lloyd guilty of domestic battery. It found Lisa's testimony to be credible and noted that the photographs were consistent with her testimony.

¶ 23    At sentencing, the State presented one previous domestic battery arrest from 2009, which had been dismissed. In mitigation, defense counsel noted that Lloyd has been an abiding citizen and "has served for the county." The trial court sentenced Lloyd to six months of conditional discharge and ordered him to complete an anger management course. The court noted that it would consider early termination of the six months of conditional discharge in three months, "provided that the anger management course is complete, as well as no new incidents."

¶ 24    On September 27, 2021, Lloyd filed a motion for a new trial, arguing that his right to a speedy trial was violated where the State changed the citation in the complaint from subsection (a)(2) of the domestic battery statute, to subsection (a)(1) of the domestic battery statute. 720 ILCS 5/12-3.2(a)(1), (2) (West 2020). Lloyd asked for the charge of domestic battery to be dismissed. Alternatively, Lloyd argued that the State failed to prove him guilty of domestic battery beyond a reasonable doubt.

¶ 25    At a hearing on the motion, the trial court noted that there was no objection when the State amended the charge against Lloyd on the day of trial. In addition, Lloyd was put on notice as to

the charges the State was bringing against him. No continuance was asked for. As for proof beyond a reasonable doubt, the court noted that Lisa was a credible witness, and the State's evidence clearly showed that Lisa had been struck in the head. The motion was denied, and this appeal followed.

¶ 26                                    II. ANALYSIS

¶ 27                                    A. Speedy Trial

¶ 28    We first address Lloyd's contention on appeal that his right to a speedy trial was violated when the State amended the charge against him the day trial was set to begin. The speedy-trial statute provides that every person on bail or recognizance "shall be tried by the court having jurisdiction within 160 days from the date defendant demands trial unless delay is occasioned by the defendant." 725 ILCS 5/103-5(b) (West 2020). "A defendant not tried within the statutory period must be released from custody and is entitled to have the charges dismissed." *People v. Hall*, 194 Ill. 2d 305, 327 (2000); 725 ILCS 5/103-5(d) (West 2020).

¶ 29    The application of the speedy trial statute "becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). This court stated in 1981:

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those

7

continuances were obtained." *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981).

¶ 30    A later-filed charge will only be considered "new and additional" for purposes of the *Williams* rule where it is subject to compulsory joinder. *People v. Williams*, 193 Ill. 2d 1, 16-17 (2000). The compulsory joinder statute states that "[i]f the several offenses were known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution *** if they are based on the same act." 720 ILCS 5/3-3(b) (West 2020).

¶ 31    Our supreme court subsequently stated in *People v. Phipps*, 238 Ill. 2d 54, 67-68 (2010):

"The focus is on whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for those trial on those charges. If the original charging instrument gives a defendant adequate notice of the subsequent charges, the ability to prepare for trial on those charges is not hindered in any way. *** In those circumstances, the rationale for declining to attribute to the defendant days in connection with the original charges does not apply."

¶ 32    Accordingly, "in determining whether the *Williams* rule will be applied, courts must compare the original charge to the new charge and discern whether the former provided sufficient notice of the latter, such that the defendant would not be subject to the 'trial by ambush' meant to be remedied by the *Williams* rule." *People v. Isbell*, 2020 IL App (3d) 180279, ¶ 16 (quoting *Phipps*, 238 Ill. 2d at 67-68).

¶ 33    With these principles in mind, we turn to the present case. Lloyd contends that the *Williams* rule should be applied because the domestic battery charge under subsection (a)(1) was sufficiently

different from the earlier charge under subsection (a)(2) such that he was not on notice of the charge against him. The State argues that the *Williams* rule should not apply because this was merely a formal amendment to the charge, not an additional charge. We agree with the State.

¶ 34 A charging instrument "may be amended on motion by the State's Attorney or defendant at any time because of formal defects," including "[a]ny miswriting, misspelling, or grammatical error," the "presence of any unnecessary allegation," or the use of "alternative or disjunctive allegations as to the acts, means, intents or results charged." 725 ILCS 5/111-5 (West 2020). A defect in a charging instrument is formal in nature where that defect "is not material or does not alter the nature and elements of the offense charged." *People v. Flores*, 250 Ill. App. 3d 399, 401 (1993). "Formal amendment is warranted especially where there is not resulting surprise or prejudice to the defendant or where the record clearly shows that he was otherwise aware of the charge against him." *People v. Ross*, 395 Ill. App. 3d 660, 668 (2009).

¶ 35 Formal defects are distinguished from substantive changes that alter the nature and elements of the offense charged. *Flores*, 250 Ill. App. 3d at 401. A trial court's decision to allow an amendment to the charging instrument will not be disturbed unless the court abused its discretion. *People v. Alston*, 302 Ill. App. 3d 207, 211 (1999).

¶ 36 This court has held that an error to the citation of a statute giving rise to a charge is a mere technical defect that is subject to amendment. See *People v. Hirsch*, 221 Ill. App. 3d 772, 777 (1991). In the case at bar, the charging instrument stated that Lloyd committed the offense of domestic battery in that he "knowingly made physical contact of an insulting nature with LISA JEFF, the wife of said defendant, in that Lloyd Jeff struck Lisa Jeff in the face with a closed fist, causing her forehead to swell." The complaint cited to subsection (a)(2) of the domestic battery statute, which states that a person commits domestic battery if he knowingly without legal

9

justification makes physical contact of an insulting or provoking nature with any family or household member. 720 ILCS 5/12-3.2(a)(2) (West 2020). Subsection (a)(1), states that a person commits domestic battery if he knowingly without legal justification causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2020).

¶ 37    Looking at the complaint, it contains the elements of both subsection (a)(1) and (a)(2) of the domestic battery statute. Accordingly, on the date of trial, the State sought to amend which subsection Lloyd was being charged with. The trial court asked defense counsel if there was any objection, to which defense counsel responded, "No objection, judge." The trial court then asked the State if it had to amend any of the language in the complaint, to which the State responded, "No, your honor." Accordingly, while the State should have been clearer about which subsection of the domestic battery statute Lloyd was being charged with from the outset, we nevertheless find that where the elements of subsection (a)(1) had been alleged in the original complaint, changing the citation from (a)(2) to (a)(1), without changing the language of the charging instrument, was merely a formal amendment and not a substantive one. See *Ross*, 395 Ill. App. 3d at 673 (agreeing with the trial court's assessment that the State's actions were "sloppy," but nevertheless finding the amendments to be formal).

¶ 38    The amendment did not alter the nature and elements of the offense charged, and importantly, there was no resulting surprise or prejudice to Lloyd as the record clearly shows he was otherwise aware of the charge against him based on the language of the complaint. See *Flores*, 250 Ill. App. 3d at 401; *Ross*, 395 Ill. App. 3d at 668 (formal amendment warranted where no resulting surprise or prejudice to defendant or where record clearly shows he was otherwise aware of charge against him). The trial court did not abuse its discretion in allowing the State to amend the complaint.

¶ 39   Even if we were to find that this was not a formal amendment, but rather a "new and additional" charge, we would nevertheless find that Lloyd was on notice of the charge against him such that no speedy trial violation took place. Lloyd relies on *Isbell*, 2020 IL App (3d) 180279, for the proposition that changing the citation in the charging instrument from (a)(2) to (a)(1) constituted a new and additional charge.

¶ 40   In *Isbell*, the defendant was charged via complaint with two counts of misdemeanor domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2020)). *Id*. ¶ 3. Count I alleged that defendant "made contact of an insulting or provoking nature with [the victim], a family or household member of the defendant, in that said defendant grabbed [the victim] by the neck with his hand(s)." Count II alleged that the defendant "made contact of an insulting or provoking nature with [the victim] *** in that said defendant body slammed [the victim]  to the ground with his hand[s]." *Id*. Two weeks before trial, the State charged defendant with a third count of domestic battery in that he "knowingly caused bodily harm to [the victim] in that said defendant pushed [the victim] to the ground." *Id*.

¶ 41   The court in *Isbell* cited the rule we noted above, that in determining whether a charge will be considered "new and additional", the court must compare the original charge to the new charge and discern whether the former provided sufficient notice of the latter, such that the defendant would not be subject to trial by ambush. *Id*. ¶ 17 (citing *Phipps*, 238 Ill. 2d at 67-68). The court then found in that case that the later-filed charge (Count III), was a new offense containing new elements, partly because the later charge "alleged new conduct." *Id*. ¶ 28. While the defendant was originally charged with grabbing the victim by the neck or body slamming her, "the later charge alleged that defendant pushed [the victim] – a wholly distinct physical act." *Id*.

¶ 42    In contrast, the language of the charging instrument in the case at bar did not change. There was not a new physical act that Lloyd was charged with, and Lloyd had been put on notice as to what he was charged with and the elements the State had to prove. Lloyd was not subject to trial by ambush, and we therefore find that no speedy-trial violation occurred.

¶ 43                    B. Sufficiency of the Evidence

¶ 44    Lloyd also contends on appeal that the State failed to prove him guilty beyond a reasonable doubt of domestic battery. "[A] conviction must be based upon proof beyond a reasonable doubt and that such proof cannot be unconvincing, improbable or contrary to human experience." *People v. Foules*, 258 Ill. App. 3d 645, 653 (1993). The duty of the reviewing court is to determine "whether the evidence viewed in a light most favorable to the prosecution would allow any rational trier o fact to find the essential elements of the crime proved beyond a reasonable doubt." *Id*. at 653-54. It is the trier of fact's responsibility to determine the credibility of witnesses, decide the weight to give witness testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Swenson*, 2020 IL 124688, ¶ 36. "A trier of fact is not required to disregard inferences that flow normally from the evidence before it, nor must the trier of fact search out all possible explanations consistent with innocence and raise those explanations to a level of reasonable doubt." *People v. Eubanks*, 2019 IL 123525, ¶ 95.

¶ 45    On appeal, a reviewing court should not retry the defendant or substitute its judgment for that of the trier of fact. *People v. McLaurin*, 2020 IL 124563, ¶ 22. Further, "[a]ll reasonable inferences are drawn in favor of a finding of guilt." *Swenson*, 2020 IL 124688, ¶ 35. "A criminal conviction will be set aside on appeal when the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt." *People v. Wise*, 2021 IL 125392, ¶ 27.

¶ 46   Lloyd was charged with domestic battery under subsection (a)(1) of the domestic battery statute which states that a person commits domestic battery if he or she knowingly without legal justification by any means, causes bodily harm to any family or household member. 720 ILCS 5/12-3.2(a)(1) (West 2020). Viewing the evidence in a light most favorable to the State, we find that the State proved Lloyd guilty of domestic battery beyond a reasonable doubt.

¶ 47   Lloyd argues that the evidence was insufficient to establish that he knowingly caused harm to Lisa. A person acts knowingly if he is consciously aware that his conduct is practically certain to cause bodily harm. *People v. Ford*, 2015 IL App (3d) 130810, ¶ 38. Where a defendant denies intent, the State may prove knowledge through circumstantial evidence. *Id.* "Intent may be proved by a defendant's conduct surrounding the act and from the act itself." *Id.* (citing *People v. Begay*, 377 Ill. App. 3d 417, 421-22 (2007) (intent can be inferred from a defendant's conduct immediately prior to the battery)).

¶ 48   Here, Lloyd's intent to cause bodily harm can be inferred where he struck Lisa in the head with a closed fist. Lisa testified that Lloyd "bopped" her to get her out of the way, and that he "hit me up side the head and put a nice big knot on my forehead." The trial court found Lisa's testimony to be more credible than that of Lloyd's. See *Swenson*, 2020 IL 124688, ¶ 36 (it is the trier of fact's responsibility to determine the credibility of witnesses, decide the weight to give witness testimony, resolve conflicts in the evidence, and draw reasonable inferences from the evidence.)

¶ 49   We find *People v. Pickens*, 354 Ill. App. 3d 904 (2004), cited by the State, to be instructive in this case. In *Pickens*, the victim testified that she had an argument with her husband, the defendant, and then left the house. *Id.* at 906. When she returned home, the garage door would not open. She sent her son inside to open it, and then directed her son to pull the car into the garage. *Id.* at 907. As she was standing in the doorway between the garage and the house, the defendant

came to the door and tried to slam it shut. *Id*. She stopped it with her hand, but then pulled her hand away, afraid it would get crushed. *Id*. The defendant then tried to close the door again, so she put the back of her foot on the door. *Id*. The victim testified that she was not sure whether the defendant actually saw her foot. *Id*. She braced herself to try to keep the door open, but her foot got smashed when the defendant shut the door. *Id*. She called the police and went to the emergency room. *Id*. Her foot was not broken, but she was given pain medication and crutches. *Id*. The trial court found the defendant guilty of domestic battery. *Id*. at 911.

¶ 50      On appeal, the defendant argued that he tried to close the door and did not intentionally or knowingly smash the victim's foot in the door. *Id*. at 912. The court on appeal noted that the trial court explicitly stated that it did not believe the defendant's version of events, and that "[t]he defendant's acts, and the circumstances surrounding [the victim's] injury, demonstrate that the defendant did intentionally or knowingly harm his wife." *Id*. at 913.

¶ 51      Likewise in the case at bar, we note that the trial court explicitly stated that it found Lisa's testimony more credible than Lloyd's, and Lloyd's acts, and the circumstances surrounding Lisa's injury, demonstrate that Lloyd did knowingly harm Lisa.

¶ 52      Lloyd also contends that the State failed to prove beyond a reasonable doubt that Lisa suffered bodily harm. To establish bodily harm, the State must prove the victim suffered some sort of physical pain or damage to the body, like lacerations, bruises, or abrasions, whether temporary or permanent. *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 43. Lisa testified at trial that as a result of Lloyd striking her in the head with a closed fist, she had a "severe knot right on the top of my forehead," she "had a severe headache for a couple of days," and that there was some "puffiness" over her eye. She took pictures of her forehead when she was in the car waiting for the police to arrive. She also took some pictures of her forehead after the police had taken Lloyd away.

¶ 53    Lloyd claims on appeal that Lisa's testimony is self-serving and not credible. However, a defendant's conviction for domestic battery may be sustained based solely on the victim's testimony. *People v. Gray*, 2017 IL 120958, ¶ 36 ("[t]he testimony of a single witness is sufficient to convict if the testimony is positive and credible, even where it is contradicted by the defendant.") Here, the trial court specifically found Lisa's testimony to be "very credible" and noted that "in addition to her credible testimony, the State presented photographs that were consistent with her testimony and corroborated the incidents that occurred on [the date in question]."

¶ 54    We find that a trial court could reasonably accept Lisa's testimony as true beyond a reasonable doubt. *Id.* (where the finding of the defendant's guilt depends on eyewitness testimony, a reviewing court must decide whether a factfinder could reasonably accept the testimony as true beyond a reasonable doubt.) Accordingly, when viewing all the evidence in a light most favorable to the State, we find that the trial court properly found Lloyd guilty of domestic battery beyond a reasonable doubt.

¶ 55                                III. CONCLUSION

¶ 56    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 57    Affirmed.