2023 IL App (1st) 210393-U

FIRST DISTRICT,
FIRST DIVISION
June 12, 2023

No. 1-21-0393

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) | No. 18C6-60108 |
| FARREN CARIDINE, | ) ) | |
| | ) | Honorable |
| Defendant-Appellant. | ) ) | Kevin P. Cunningham, Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Pucinski and Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Trial counsel was not ineffective for failing to exercise peremptory challenge against juror where the decision was trial strategy and defendant was not prejudiced.

¶ 2    Following a jury trial, defendant Farren Caridine was found guilty of aggravated driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(d)(1)(A) (West 2018)) and was sentenced to four years' imprisonment. On appeal, defendant claims that trial counsel was ineffective for failing to exercise a peremptory challenge to remove a prospective juror. For the following reasons, we affirm the judgment of the circuit court.

¶ 3                                          BACKGROUND

¶ 4                                         Jury Selection

¶ 5        During *voir dire*, the following exchange occurred between the trial court and prospective

juror S.K., as follows:

"Q. Have you ever been the victim of a crime?

\*\*\*

A. A drunk driver just crashed into my car, my parked car.

\*\*\*

Q. Were you in the car at that time?

A. No, I was in my apartment.

Q. Okay. Were there any charges?

A. I don't know, the insurance, All State, just paid me.

\*\*\*

Q. Well, again, if the driver crashed into your car and left the scene, how do you know

that the driver was driving drunk?

A. The police come over to make a report. He crashed into three cars, three damaged

cars.

 Q. Is there anything about that experience that would cause you to be – have it be

difficult for you to be fair and impartial this afternoon?

A. Yeah.

\*\*\*

Q. Why's that?

A. I hate guys like that.

***

Q. Have you or any member of your family or very close friends ever been involved in, arrested for, or connected with the offense of driving under the influence?

A. Yeah, I got DUI 30 years ago.

***

Q. All right. Is there anything about your experience when you were charged with driving under the influence of alcohol that would prevent you from being fair and impartial this afternoon?

A. Yeah, after that I don't drink much and drive. After DUI I go to school for that. My license got suspended for long time."

When asked again if he could "still be fair and impartial" "based on [his] experience as somebody who was charged with driving under the influence of alcohol," S.K. responded, "Yes."

¶ 6     S.K. agreed that "a person can consume an alcoholic beverage and still be capable of driving." When asked by the trial court, "Will you wait until you hear all the evidence and hear the arguments of the lawyers and hear my instructions on the law before making up your mind?" S.K. answered yes. S.K. also indicated that he understood and accepted that: defendant "is presumed to be innocent of the charges against him"; that "the presumption of innocence *** is not overcome unless from all the evidence [he] believe[s] that the State had proved [defendant] guilty beyond a reasonable doubt"; that defendant does not have to testify and that if he does not, it "must not be considered *** in arriving at [S.K.'s] verdict"; and that defendant is "not required to present any evidence at all and may rely on the presumption of innocence." S.K. agreed that he would return a guilty verdict if the "State proves the defendant guilty beyond a reasonable

- 3 -

doubt," and a not guilty verdict if "the State fails to prove the defendant guilty beyond a reasonable doubt."

¶ 7     Defense counsel used two of defendant's seven peremptory challenges during jury selection; one to remove a juror who "believe[d] if somebody drinks, they cannot drive." Defense counsel did not move to strike S.K. for cause or use a peremptory challenge to remove him from the jury.[1]

¶ 8                                         Jury Trial

¶ 9     At trial, Officer Marshan Johnson testified that at about 12:38 a.m. on February 5, 2018, he was on "stationary patrol" when he saw a gray sedan "stop approximately two car lengths in front of a white line of a red light." When the light turned green, the sedan "accelerated off at a fast pace." Johnson followed the sedan in his squad car and saw it "swerve[ ] in and out of two lanes without signaling." Johnson activated his emergency lights. The passenger tires "hit the curb" as the vehicle pulled over.

¶ 10    Johnson approached the vehicle and saw defendant in the driver's seat and a child, later determined to be eight-year-old Breanna Bush, seated alone in the back.[2] Defendant was unable to provide proof of insurance or a driver's license. His eyes were bloodshot, his speech was "noticeably slow," his breath had a "very strong odor of alcohol," and his license had been revoked. Defendant was arrested and placed in Johnson's squad car.

---

[1] After the jury panel upon which S.K. sat was accepted, the trial court stated, "Wow. 9, 10, 11 and 12. So now we just got to pick two alternates." Prior to sentencing, the trial judge clarified that when he said "wow," he "was not making a critical observation of somebody accepting that panel. [He] was surprised at the speed that [they] had reached the third panel and that being the 12 jurors."

[2] The parties did not explain how defendant knew Bush. Bush's mother eventually picked her up and took defendant's car with her.

¶ 11       Johnson testified that he had observed people under the influence of alcohol "[h]undreds of times" in both his professional and personal life. In Johnson's opinion, defendant's driving infractions, slurred speech, bloodshot eyes, and the strong smell of alcohol on his breath indicated that he was under the influence of alcohol.

¶ 12       When Officer Samuel Suffern arrived at the scene, defendant and a "young adolescent female" were in the back seat of Johnson's squad car. Defendant had "red watery bloodshot eyes," his breath had a strong smell of alcohol, and he "seemed disoriented." Defendant stumbled and fell while being moved to Suffern's squad car for transport to the police station. He slept during the "entire" 15-minute ride to the police station, fell again while exiting the squad car, and stumbled while being led into the booking area.

¶ 13       Suffern administered three standardized field sobriety tests at the station—the horizontal gaze nystagmus test, the walk-and-turn test, and the one-leg-stand test. During the horizontal gaze nystagmus test, defendant's eyes "jerked and bounced" and he "did not follow smoothly." During the walk-and-turn test, defendant "did not touch heel to toe on four steps *** or all remaining steps back to the starting position, he stepped off line on four steps *** to regain his balance, used his arms for balance, conducted the turn improperly, and took 15 steps forward and 18 steps on the return." He "could not keep his balance," his arms "were out to the side beyond six inches," and he "placed his hands on the wall to prevent falling over or to maintain his balance." For the one-leg-stand test, defendant swayed, reached his arms out to the walls for balance, and placed his foot down "numerous times." In Suffern's opinion, defendant was "under the influence of alcohol."

¶ 14       The jury found defendant guilty of aggravated DUI.

¶ 15                                    Motion for New Trial

¶ 16        On November 17, 2020, counsel filed a motion for new trial, alleging, *inter alia*, that defendant was denied his right to an impartial jury based on juror S.K.'s statement that "he would have difficulty being fair and impartial because he 'hate[s] guys like that' " and that trial counsel was ineffective in failing to "challenge for cause or strike" S.K.[3] The trial court appreciated that S.K.'s statement could "turn off a defense counsel to an individual like that to be selected as a juror," but also recognized that S.K.'s prior experience with the criminal justice system made him an "intriguing prospect as a juror." The court concluded that keeping S.K. as a juror was a "strategy decision" because a juror who "was arrested, treated by police, processed in the same manner or similar manner as the matter before the trial *** could be a dangerous [juror] for [the] State." In addition, S.K. "ultimately answered that he would be fair," "[t]hat if the evidence were there to acquit, he would acquit," and "that he would follow the law." Defendant's motion for new trial was denied and he was sentenced to a term of 4 years' imprisonment.

¶ 17                                        ANALYSIS

¶ 18        Defendant argues that trial counsel was "objectively unreasonable for failing to challenge S.K. because voir dire indicated S.K.'s hatred of drunk drivers would prevent him from being fair and impartial." To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and that this deficient performance resulted in prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Specifically, a defendant must demonstrate that (1) counsel's representation "fell below an objective standard of

---

[3] On December 20, 2019, defendant's original trial counsel withdrew, and an Assistant Public Defender was appointed to represent him.

reasonableness" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 688, 694.

¶ 19        Establishing deficient performance requires overcoming "the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Defense counsel's conduct during *voir dire*, including the decision whether to exercise a peremptory challenge, "involves matters of trial strategy that generally are not subject to scrutiny under *Strickland.*" *People v. Metcalfe*, 202 Ill. 2d 544, 562 (2002); see also *People v. Manning*, 241 Ill. 2d 319, 333 (2011) (because "counsel's actions during jury selection are generally considered a matter of trial strategy" they are "virtually unchallengeable"); *People v. Bowman*, 325 Ill. App. 3d 411, 428 (2001) ("[t]he decision whether to exercise an available peremptory challenge is a strategic one"). We must review the "entire *voir dire*" of the juror at issue in considering whether counsel's decision was trial strategy. See *Manning*, 241 Ill. 2d at 334.

¶ 20        Considering the entire *voir dire* of S.K., defendant has not overcome the strong presumption that counsel's decision to keep S.K. as a juror was trial strategy. S.K. affirmed that he understood and accepted the presumption of innocence, that the State must prove defendant guilty beyond a reasonable doubt, that he would decide the case based on all of the evidence and the arguments of counsel, and that he would return a not guilty verdict if the State failed to meet its burden of proof. Although S.K. stated that he "hate[s]" drunk drivers, he also stated that he had previously been charged with the offense of driving while under the influence of alcohol. As aptly noted by the trial judge, S.K. "was arrested, treated by police, processed in the same manner or similar manner" as defendant, making S.K. an "intriguing" juror for the defense and a "dangerous" juror for the State.

¶ 21 In *Manning*, 241 Ill. 2d at 335, our supreme court cautioned that "[r]eviewing courts should hesitate to second-guess counsel's strategic decisions, even where those decisions seem questionable." The defendant was charged with possession of a controlled substance, and counsel introduced evidence of defendant's registered sex offender address to show that the drugs were not found at his residence. *Id.* at 322. During *voir dire*, one juror stated that sex offenders should be " 'locked up for life.' " *Id.* When the trial court asked the juror whether he would be able to render a decision " 'separate and distinct from the sex offender case,' " the juror said he would, but later stated he " 'cannot be fair with the case.' " *Id.* at 322-23. After considering the entire *voir dire* in context, the court found that counsel's decision to keep A.C. as a juror was trial strategy. The court relied on the juror's statement that he would "be able to listen to the evidence and render a decision apart from the sex offender issue." *Id.* at 334. Noting that counsel had used peremptory challenges on other prospective jurors who expressed negative feelings toward sex offenders, the court recognized that "it is possible that defendant's trial counsel decided that [the juror] was not unequivocally biased." *Id.* at 335.

¶ 22 Here, considering the entire *voir dire* of S.K. in context, it is possible that defense counsel decided S.K. was "not unequivocally biased." Since S.K. had previously been accused of driving under the influence of alcohol, "defense counsel could have believed that [S.K.] would sympathize with the defendant." See *Manning*, 241 Ill. 2d at 336 (citing *People v. Begay*, 377 Ill. App. 3d 417, 423 (2007)). S.K. also stated that he would decide the case based on all of the evidence and hold the State to its burden of proof. At the time of S.K.'s questioning, defense counsel had five remaining peremptory challenges. Having already removed one juror who believed people could not drive after consuming any amount of alcohol, counsel obviously understood he could use a peremptory challenge if he felt S.K. would not be fair and impartial.

¶ 23        Under these circumstances, defendant has not overcome the strong presumption that counsel's decision to accept S.K. as a juror was a matter of trial strategy. See, *e.g.*, *Metcalfe*, 202 Ill. 2d at 562 (counsel's decision to accept juror who was a victim of the same crime that defendant was charged with was trial strategy because counsel could have determined that juror's bias was against the State); *Begay*, 377 Ill. App. 3d at 423 ("counsel could have determined that the juror, whose mother had been attacked by a knife-wielding assailant, would sympathize with the defendant, a woman who similarly alleged that she was the victim here of a knife-wielding aggressor"); *Bowman*, 325 Ill. App. 3d at 428 (finding that "defendant has failed to show that counsel's decisions, questionable as they might be, were not tactical and a matter of jury selection strategy").

¶ 24        Even assuming *arguendo* that counsel's performance was deficient, defendant has not shown a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See *Strickland*, 466 U.S. at 694. Defendant asserts that he was prejudiced because "counsel's failure to remove S.K. from the jury rendered the result of the trial unreliable and the proceeding fundamentally unfair." See *People v. Jackson*, 205 Ill. 2d 247, 259 (2001) (noting that the prejudice prong is "not simply an 'outcome-determinative' test but, rather, may be satisfied if defendant can show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair").

¶ 25        The record does not establish that S.K. had "any clear bias or prejudice" against defendant. See *Bowman*, 325 Ill. App. 3d at 422 (defendant failed to show prejudice where he failed "to identify any clear bias or prejudice" held by the juror against him). Moreover, the credible testimony of Officers Johnson and Suffern "was more than sufficient to prove defendant's guilt beyond a reasonable doubt." See *Metcalfe*, 202 Ill. 2d at 562; see also *Bowman*,

325 Ill. App. 3d at 428-29 (defendant was not prejudiced where "[t]he evidence against [him] was strong").

¶ 26                                    CONCLUSION

¶ 27          For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28          Affirmed.