2024 IL App (2d) 230254-U
No. 2-23-0254
Order filed May 22, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-DV-37 |
| OSCAR E. OTERO-REYES, | ) ) | Honorable Bolling W. Haxall III, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: At defendant's trial on domestic abuse charges, (1) defense counsel was not ineffective for failing to object that the victim's references to defendant's prior conduct violated pretrial bar on evidence of defendant's prior bad acts, where an objection would have served only to highlight the import of the testimony, and, moreover, there was no prejudice to defendant; and (2) the State's closing argument misrepresenting part of defendant's testimony did not create substantial prejudice, where the jury was properly instructed to disregard any argument not based on the evidence and there was ample proof of defendant's guilt.

¶ 2    Defendant, Oscar E. Otero-Reyes, appeals from his convictions of two counts of domestic battery (720 ILCS 5/12-3.2(a)(1), (a)(2) (West 2022)). Defendant contends that (1) his trial counsel was ineffective for failing to object at trial to the victim's testimony regarding defendant's

prior bad acts and (2) the prosecutor committed reversible error by inaccurately stating in closing argument that defendant lacked credibility because he had falsely testified that it was snowing on the day of the charged incident. We affirm because (1) counsel was not ineffective for failing to object regarding the victim's testimony about defendant's prior conduct and (2) the prosecutor's inaccurate statement during closing argument did not substantially prejudice defendant.

¶ 3                                    I. BACKGROUND

¶ 4       The State charged defendant with one count of domestic battery based on bodily harm (720 ILCS 5/12-3.2(a)(1) (West 2020)) and one count of domestic battery based on insulting or provoking contact (720 ILCS 5/12-3.2(a)(2) (West 2020)).

¶ 5       Before defendant's jury trial, defendant filed a motion *in limine*, seeking to bar the State "from referencing or eliciting testimony about any prior convictions [of defendant] or prior bad acts that [d]efendant is alleged to have committed." In granting defendant's motion *in limine*, the trial court stated, "Prior convictions. There's been no [*People v. Montgomery*, 47 Ill. 2d 510 (1971)] motion filed, so that's granted." The court did not specifically mention the part of the motion regarding "prior bad acts," nor did the State object to that part of the motion.

¶ 6       The following facts were developed at trial. On the evening of January 7, 2023, Karla Lugo was unpacking in her new apartment. According to Lugo, a friend had stopped by for a few minutes to pick up some eye drops. As the friend was leaving, Lugo saw defendant, her ex-boyfriend, outside her apartment building. Because of how "things had ended," Lugo had told him he was not allowed at her apartment. When she saw defendant, she ran to her apartment.

¶ 7       After she entered her apartment, defendant began banging on the door. For 30 to 35 minutes, defendant continued banging on the door and asking to be let in. When Lugo heard

defendant crying, she opened the door, and defendant shoved open the door and entered her apartment.

¶ 8    According to Lugo, defendant closed the door and "tr[ied] to lock it." He began insulting her. He told her that he just saw her ex-boyfriend leave the building and accused her of sleeping with him. When Lugo asked defendant to leave, he suddenly bent down and "start[ed] smelling [her] private [parts]."

¶ 9    Lugo kept telling defendant to leave. He then "hit[ ] [her] full force on the face." He struck her with such force that the back of her head hit the door behind her. According to Lugo, defendant struck her with an open hand. When the prosecutor asked her how defendant "look[ed]" when he hit her in the face, Lugo answered that he "had that look from previous times that he was just full of anger, like, that cold stare."

¶ 10   After defendant hit her, Lugo kept telling him to leave, but he refused. Defendant "kept screaming" and told Lugo that he had wasted three years of his life dating her. Suddenly, defendant hit Lugo again, now with a closed hand. When the prosecutor asked Lugo how she felt after being hit a second time, she responded that she "was just terrified because [she] knew what he was, you know, capable of."

¶ 11   According to Lugo, she walked into the kitchen and again asked defendant to leave. Defendant refused to leave, followed her into the kitchen, and "g[ot] really close" to her, *i.e.*, within a couple of inches. Because Lugo thought defendant was going to hit her again, she grabbed a knife from a kitchen drawer and "threatened him to leave [her] alone." When defendant came even closer to Lugo, she turned the knife away from him because she intended to scare, not hurt, him. When she asked him again to leave, he spat in her face and kept insulting her.

¶ 12    Lugo then called the police. As she was on the phone, she kept begging defendant to leave. Defendant left a few minutes before the police arrived.

¶ 13    Lugo recognized two photographs the police took of her face when they responded that evening. She identified an injury under her left eye in the photographs. Lugo testified that she did not have that injury before defendant arrived on January 7, 2023, and that he caused it when he struck her in the face.

¶ 14    On cross-examination, Lugo admitted that she wrote in her statement to the police that defendant's hand was "almost closed" when he struck her the second time. She also admitted writing that she "threatened that [she] would grab a knife" if defendant did not leave. The prosecutor then asked, "But what you're telling us today is that you did indeed grab a knife and threaten [defendant] with that knife?" Lugo answered yes. When asked why she ran to her apartment after seeing defendant, she answered that she "knew his temper, and we had ended on bad terms."

¶ 15    When the prosecutor asked Lugo on redirect examination why she called the police, she explained that she was "really genuinely scared. And it wasn't the first time, and [she] just wanted him to leave and not come back." She added that she "knew if [she] didn't, like many other times before, the cycle was just going to keep happening and happening."

¶ 16    Officer Jorge Santana of the Waukegan Police Department testified that, at around 11 p.m. on January 7, 2023, he was dispatched to Lugo's apartment to investigate a report of a domestic battery. When he arrived, he observed that Lugo was "very distressed and crying." Santana identified a photograph of Lugo's face taken by another officer at the scene. Santana identified in the photograph a "fresh bruise to [Lugo's] left eye." By "fresh," Santana meant that the bruise

"had just occurred." On redirect examination, Santana identified in another photograph of Lugo's face a "small, red cut on her upper lip, inside of her upper lip."

¶ 17 Defendant testified that he had slept with Lugo on the night of January 6, 2023. According to defendant, he went to Lugo's apartment on January 7, 2023, to surprise her. When he arrived, he saw Lugo's ex-boyfriend exiting the front door of the building. Defendant entered the front door and went to Lugo's apartment on the third floor.

¶ 18 Defendant knocked on Lugo's door for about 30 seconds before she let him in. When Lugo admitted that her ex-boyfriend had just left her apartment, defendant's "life turned around." According to defendant, he and Lugo had planned a future together and he was disillusioned when he found out that her ex-boyfriend had been there. Defendant wanted to leave immediately, but Lugo grabbed his arms, as if to make him stay. Defendant thought that "[p]erhaps [Lugo] wanted to clarify." Defendant pulled away from Lugo, but she then "opened one of the cabinets, and *** pulled out a knife." At that point, defendant decided to stay. He sat on a couch because he "wanted to calm down, and *** talk about what was going on."

¶ 19 According to defendant, after he sat down, Lugo stood at the door, holding the knife. When defendant asked Lugo "why she was doing this to [him]," she told him to leave. He was afraid to try, however, because of the knife. At one point, when Lugo stepped back, defendant left and went home to rest. He had no contact with her after that.

¶ 20 On cross-examination, defendant confirmed that he was frightened of Lugo while she was holding the knife. Defendant denied that he was "bigger" than Lugo; rather, she was "bigger [by] one centimeter." He also denied that he was "larger" than Lugo.

¶ 21   The prosecutor also asked defendant what the weather was like on January 7, 2023. Defendant answered that it was "[a] bit cold." When the prosecutor asked him if it was snowing on January 7, 2023, defendant said no.

¶ 22   On redirect examination, defendant denied spitting on Lugo, hitting her, or causing the bruise on her cheek.

¶ 23   In rebuttal, Lugo testified that the last time that she had seen defendant before January 7, 2023, was around New Year's Day of 2023. When asked whether it was snowing on January 7, 2023, Lugo said it was not.

¶ 24   During closing argument, the prosecutor commented that defendant denied being "bigger" than Lugo even though it was easy to see that he was. According to the prosecutor, defendant lied about his size with "the same level of confidence, the same demeanor, the same cadence as the rest of his story." The prosecutor then commented:

"[Defendant] has every reason to make stuff up. And when a person makes up a story, it's the details that matter. Little details. The way that a person responds to questions and the way that they talk about the details of what happened, that can show you whether or not they were telling the truth.

Let's take the question of whether or not it was snowing. It seems innocuous. For a person who's just going about their everyday life, they might not remember whether it was snowing on a certain day. When a person is moving, it's a big change. You're doing a lot. You probably remember what the weather is like. Maybe you're moving in the summer and you're sweating. Maybe you're moving in the spring and it's downpouring. Maybe you're moving in the winter and it's snowing or it's really cold. These are big points of change in our life when memories tend to stick.

And you know what wasn't sticking on January 7th? Snow, because it wasn't snowing. But when the defendant was asked if it was snowing on that day, he said, yes, slightly."

¶ 25    At this point, defense counsel objected, stating that she did not recall defendant testifying that it was snowing on January 7, 2023. She added that she recalled him testifying that it was cold but not snowing on that date. The trial court overruled the objection but told defense counsel that she could address the matter during her closing argument. The prosecutor then commented to the jury that, when defendant was asked whether it was snowing on January 7, 2023, he answered "with the same cadence and the same demeanor, the same confidence that he told the rest of [the] story. Again, he said something that was untrue the same way that he told the rest of the story of what happened."

¶ 26    In her closing argument, defense counsel noted that Lugo and defendant agreed it was cold but not snowing on January 7, 2023. Defense counsel also commented that the relationship between Lugo and defendant was "toxic," with "heightened emotions," "infidelity," and "arguments." In rebuttal, the prosecutor stated that both sides agreed that the relationship was toxic.

¶ 27    The trial court instructed the jury that closing argument (1) must be confined to the evidence, (2) should not be considered as evidence, and (3) should be disregarded to the extent that it is not based on the evidence.

¶ 28    The jury found defendant guilty of both counts of domestic battery. Defendant filed a motion for a new trial, arguing, among other things, that he was denied a fair trial because the State, in violation of the pretrial order barring evidence of defendant's prior bad acts, had elicited Lugo's testimony that defendant had previously been violent toward her. Defendant also claimed

that the State had engaged in improper and prejudicial argument when it misstated to the jury that defendant had testified falsely that it was snowing on January 7, 2023.

¶ 29    At the hearing on the motion for a new trial, defense counsel acknowledged that she failed to object at trial when Lugo testified about defendant's prior bad acts. However, counsel argued that she had preserved the issue by raising it in her motion *in limine* and, thus, did not need to object at trial. She further contended that she did not object at trial because, "strategically[,] it didn't seem wise to draw attention to those statements." Nonetheless, she argued that, because defendant deserved a fair trial, the error in admitting the evidence of prior bad acts was alone sufficient to merit reversal due to its prejudicial effect as evidence of prior domestic abuse. She also argued that the State's attack on defendant's credibility by misstating his testimony about the weather on the day of the incident substantially impacted the jury's assessment of defendant's believability.

¶ 30    The trial court denied the motion for a new trial. The court noted that, although the State did misstate defendant's testimony about whether it was snowing on the day of the incident, defense counsel made an immediate objection. Moreover, the court assured defense counsel that she could address the matter in her closing argument, which she "did so ably." The court also noted that any error would have been cured by the instructions to the jury that they were the fact finders in the case. Finally, the court commented that, even aside from the misrepresentation, the State's argument—that defendant was not believable because he was incorrect about whether it was snowing on the day of the incident—was not persuasive.

¶ 31    "[T]he most significant issue," the trial court observed, was the evidence of defendant's prior bad acts. The court recalled that it was surprised that defendant did not object to that evidence. However, the court was now persuaded that defense counsel "certainly [made] a

reasonable strategic decision" not to object to the evidence for fear of drawing attention to it. The court added that it was also "strategic" for defense counsel to avoid "reinforc[ing] the testimony" by raising the issue later or seeking a curative instruction. Nonetheless, although the court would have sustained an objection to Lugo's testimony, the evidence of prior bad acts was too vague to warrant a new trial.

¶ 32                                    II. ANALYSIS

¶ 33    On appeal, defendant contends that (1) his trial counsel was ineffective for failing to object to those portions of Lugo's testimony that violated the *in limine* order barring the State from referencing or eliciting any testimony about defendant's prior bad acts and (2) the State committed reversible error when, in attacking defendant's credibility, the prosecutor misstated in closing argument that defendant had falsely testified that it was snowing on the day of the incident.

¶ 34    To establish ineffective assistance of counsel, a defendant must demonstrate that (1) counsel's performance was objectively unreasonable compared to prevailing professional standards and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Cherry*, 2016 IL 118728, ¶ 30 (citing *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). To succeed on a claim of ineffective assistance, "the defendant must overcome the strong presumption that the challenged action or inaction may have been the product of sound trial strategy." (Internal quotation marks omitted.) *People v. Manning*, 241 Ill. 2d 319, 327 (2011). "As a general rule, trial strategy encompasses decisions such as what matters to object to and when to object." *People v. Pecoraro*, 144 Ill. 2d 1, 13 (1991). "A defendant can overcome the strong presumption that defense counsel's choice of strategy was sound if his or her decision appears so irrational and unreasonable that no reasonably

effective defense attorney, facing similar circumstances, would pursue such a strategy." *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82.

¶ 35   Here, as defense counsel pointed out at the hearing on the motion for a new trial, she decided, as a matter of trial strategy, not to object to Lugo's testimony about defendant's prior conduct, because she did not want to draw attention to it.  We agree that defense counsel's decision not to object was a sound trial strategy.   When the prosecutor asked Lugo how defendant "look[ed]" when he hit her in the face, she answered that he "had that look from previous times that he was just full of anger, like, that cold stare."  When asked how she felt after being hit the second time, Lugo responded that she was "just terrified because [she] knew what he was, you know, capable of."  When asked on cross-examination why she ran to her apartment after seeing defendant outside her building, Lugo responded that she "knew his temper, and we had ended on bad terms."  Lastly, when asked on redirect examination why she called the police, Lugo answered that she was "really genuinely scared.  And it wasn't the first time, and [she] just wanted him to leave and not come back."  She added that she "knew if [she] didn't, like many other times before, the cycle was just going to keep happening and happening."  None of Lugo's answers clearly conveyed that defendant had previously hit or otherwise physically abused her.  Indeed, the jury might have inferred simply that defendant was easily angered.  Thus, defense counsel could reasonably believe that objecting to Lugo's testimony as evidence of prior bad acts would only confirm for the jury what they might not have understood on their own: that Lugo claimed that defendant had previously hit or physically abused her.  Further, even if Lugo's testimony were clearer that defendant had physically assaulted her in the past, it would still have been reasonable for defense counsel to attempt to minimize the import of that testimony by not objecting.  Indeed, defense counsel did not need to object to preserve the issue for appeal.  She had already preserved

the issue via her motion *in limine*[1] and could, without alerting the jury, raise the issue in her posttrial motion, as she did. Because there were sound strategic reasons for not objecting to Lugo's testimony, defense counsel was not deficient for failing to have done so.

¶ 36    Even if defense counsel were deficient for failing to object to Lugo's testimony about defendant's prior conduct, that failure did not prejudice defendant. First, as discussed, Lugo did not clearly state that defendant had committed prior bad acts against her. Second, in its closing argument, the State did not mention Lugo's testimony about defendant's prior conduct toward her. At most, the State (in rebuttal) agreed with defendant that the relationship was "toxic." The lack of any mention of Lugo's testimony about defendant's prior conduct minimized any prejudicial impact. Third, there was ample evidence of defendant's guilt. Lugo testified that defendant hit her twice in the face with his hand; one of the blows forced her head back against the door behind her. Santana testified that, when he arrived at the scene, Lugo was "very distressed and crying." He observed what appeared to be a "fresh" bruise under Lugo's left eye. Two photographs taken by a police officer shortly after the incident clearly showed a bruise under Lugo's left eye, which Lugo testified she did not have before defendant came to her apartment on January 7, 2023. Considering the minimal attention given to Lugo's testimony and the significant independent

---

[1]We note that, to preserve an issue for appeal in a criminal case, the defendant must raise the issue in (1) a motion *in limine* or an objection at trial and (2) a posttrial motion. *People v. Denson*, 2014 IL 116231, ¶ 18. We reject both (1) the State's argument that Lugo's testimony did not fall under the court's pretrial ruling on prior acts evidence and (2) defendant's argument that defense counsel needed to make a contemporaneous trial objection to preserve the issue for appeal.

evidence of guilt, defendant has not shown any prejudice from counsel's alleged deficient performance.

¶ 37    We next address defendant's contention that the State committed reversible error in closing argument when the prosecutor misstated defendant's testimony about whether it was snowing on the day of the incident and argued to the jury that defendant was thus not credible.[2]    The State concedes that the prosecutor misrepresented defendant's testimony but asserts that the improper argument did not result in substantial prejudice.  We agree.

¶ 38    Prosecutors are afforded wide latitude in closing argument.  *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007).  In reviewing comments made during closing argument, we ask whether the comments "engender[ed] substantial prejudice *** such that it is impossible to say whether or not a verdict of guilt resulted from [the improper comments]."  *Wheeler*, 226 Ill. 2d at 123.  Misconduct in closing argument is deemed substantial, warranting reversal and a new trial, if the improper remarks "constituted a material factor" in the defendant's conviction.  *Wheeler*, 226 Ill. 2d at 123. "If the jury could have reached a contrary verdict had the improper remarks not been made, or the reviewing court cannot say that the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted."  *Wheeler*, 226 Ill. 2d at 123.

¶ 39    Here, defendant promptly objected to the prosecutor's improper argument that defendant falsely testified that it was snowing on the day of the incident.  Although the trial court overruled the objection, it told defense counsel that she could address that comment during her closing

_____

[2]Although the case law is unsettled on whether this issue is to be reviewed *de novo* or for an abuse of discretion, we need not decide the proper standard of review, because the result would be the same under either standard.  See *People v. Burman*, 2013 IL App (2d) 110807, ¶ 26.

argument. Defense counsel did so by pointing out that defendant actually testified that it was not snowing on the day of the incident. Accordingly, the jury was alerted to the fact that defendant contested the State's version of defendant's testimony about whether it was snowing. Further, the court instructed the jury that closing argument was not to be considered evidence. More importantly, the court instructed the jury that it should disregard any statement or argument by the attorneys that was not based on the evidence. Because the jury was alerted to the prosecutor's inaccurate characterization of defendant's testimony and instructed to disregard any statements by the attorneys that were inconsistent with the evidence, any prejudicial impact was significantly minimized.

¶ 40 Additionally, the prosecutor did not emphasize defendant's supposed fabrication about the weather. It was only one of several examples the prosecutor referenced in demonstrating how defendant had falsely testified. Nor was it repeated during rebuttal argument. Thus, its prejudicial impact was further minimized.

¶ 41 Finally, as discussed (*supra* ¶ 36), there was ample evidence of defendant's guilt independent of the prosecutor's improper comment during closing argument. Lugo testified that defendant struck her twice in the face, and her account was corroborated by Santana's testimony and police photographs establishing that Lugo was bruised under her left eye.

¶ 42 Based on the foregoing, no reversible error occurred here. First, trial counsel was not deficient for failing to object to Lugo's testimony about defendant's prior conduct and, in any event, no prejudice resulted from that failure given the little emphasis placed on her testimony and the ample independent evidence of defendant's guilt. Second, the prosecutor's improper comment during closing argument did not result in substantial prejudice to defendant, because the jury was alerted to the inaccuracy of the comment and told to disregard any comments not based on the

evidence.  Moreover, as noted, the evidence of defendant's guilt was more than enough to support his conviction.

¶ 43                                    III. CONCLUSION

¶ 44     For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 45     Affirmed.